Myung Pham LeGro
2018 Maleady Drive
Herndon, VA 20170
27 September 2007




Ashby and Geddes
500 Delaware Ave
PO Box 1150, Wilmington, DE 19899
Ms. Carolyn S. Hake


Case Number 07-511

Dear Ms. Hake:

I have told you that I intend to relinquish my right as beneficiary of my late sister's insurance policy, and I still plan to do so. However, before I sign the agreement you sent to me, I wish to be assured that you have had the form my sister signed naming me the beneficiary carefully examined. I have reason to suspect that it has been altered to mislead and to reflect that my sister signed it on the day before her death, when in fact I believe she signed it at least two days before she died. I have never seen the original "Group Insurance Beneficiary Designation," but I received, from a source unknown to me, a reproduced copy on which my sister's signature has been obliterated, and the date "5/23/07" has been entered and circled. This date does not appear to be in my sister's hand, and the date is wrong. I believe she signed it not later than the 22nd. You should be able to confirm this through the persons from Playtex who witnessed her signature.

I have enclosed my letter of 16 June to the insurance company, in which I accurately summarize the facts about the change of beneficiary that my sister executed at least two days before she passed away. Mr. Withrow's assertion that she was too heavily sedated to do this without my help and urging is terribly wrong, and he knows it. She was not heavily sedated until her final few hours of life. I have enclosed the altered form, which came in an envelope postmarked, "Wilmington." which also contained two letters from Mr.Withrow's lawyers.

I do not want to fight for this money, to endure the stress of a trial far from my home, or to see Mr. Withrow or Delaware ever again. But I do not believe he should profit from fraud or forgery. That is what I believe may be happening here. If you can assure me that the circled date, "5/23/07," was written on the original document by my sister, and that this has been confirmed by a qualified expert, I shall sign the agreement you sent to me.

Sincerely,

Myung Pham LeGro

cc: Clerk of the United States District Court, District of Delaware

L
Colonel William E. LeGro
2018 Meleady Drive
Herndon, VA 20170

NO VA 220
29 SEP 2007 PM 3 L

USA FIRST-CLASS FOREVER

Clerk
U.S. District Court
Boggs Federal Bldg
844 N. King St.
Wilmington, DE 19801

19801+3519

07-511 ***




Myung Pham LeGro
2018 Maleady Drive
Herndon, Virginia 20170
16 June 2007

The United States Life Insurance Company
Neptune, NJ 07754
Reference: Group policy # G214756

Gentlemen:

Enclosed you will find my claim as beneficiary of the life insurance policy of my sister, Lisa Withrow, who passed away, her frail hand in mine, on 24 May, 2007. My sister's husband, James Withrow, has made some egregiously false statements about my sister and me and it is my duty to set the record straight. In late April, Lisa underwent major abdominal surgery for cancer. On 28 April my husband (Col. William E. LeGro, USA Ret.) and I drove up from our home in Virginia to visit her in the hospital. Shortly after we returned home, we called Mr. Withrow to tell him that I would return to visit Lisa again soon because she was alone and very unhappy. He told me to wait a few days because he was going to move her to a cancer recovery center in Wilmington. I was so worried for my sister that I called him a day or so later and he told us that he and their daughter had moved Lisa to a nursing home because they could not care for her at home, although they certainly had the resources to do so. My husband and I returned to Dover on the following weekend to visit her in the nursing home. She was very sad, feeling that she had been left there to die, abandoned by her husband and family. I assured her that if she were released, I would come up to stay with her in her home. About two days later Mr. Withrow called and told me that Lisa had checked herself out of the nursing home, and he asked for my help. The same day my husband drove me back to Delaware where I remained with my sister, night and day, until she died.

I do not know when she made the decision to name me as beneficiary, but I recall clearly hearing her tell her husband that she was going to remove him as beneficiary. I was staying with her every moment, day and night, sleeping on the floor beside her bed, and caring for her every need. She told me that she was going to leave me a little money so I could continue to give money to her charities and help poor people in Vietnam, but she never told me how much money or how she was going to do it. I told her that I did not want to make any trouble in her family over money, that all I wanted was for her to get well and to be able to travel again to Vietnam and help the people herself. She said that her husband would get plenty of money from her other policy and investments and I should not worry about that; she knew how to handle it.

One Friday in May—I believe it was the 11th—Mr. Withrow took her to conduct some business at the Social Security office. I went along to help her, and I was in the back seat of the car when she told him that he didn't need the money from her policy, the one on which she paid $11 per month, and that she was going to change to beneficiary. When we got home, she told me that she had asked someone at Playtex to mail a change-of-beneficiary form to her, and she asked me to check the mailbox for it. It never came.

Her condition worsened and she was readmitted to the hospital. I moved into the hospital room with her, sleeping on the couch, helping her with her meals, keeping her clean, and comforting her as best I could, not even leaving her room for meals.

A few days after she was readmitted, a gentleman came to see her. She was sleeping at the time, so I asked him if he would like to wait until she awakened. He said that he could not but would come back again. Before he left he gave me brown envelope to give to my sister. I showed the envelope to my sister when she woke up. She looked at the paper inside, put it back in the envelope, and asked me to put it in my bag until she asked for it.

A day or so after the gentleman left, two ladies from Playtex came to visit. They apparently knew her well, for they embraced her and said some kind words to her. She asked me for the envelope, which I gave to her. The ladies helped my sister fill out the form. My sister asked me to give them my address and social security number, which I did. My sister signed the form, and I believe the ladies signed it as witnesses. Then the ladies said goodbye and left with the form.

I was too emotionally and physically exhausted to attend the funeral but several of my relatives were there, including my brother and two of my sisters. They told me that Mr. Withrow raged about the policy, accused me of forgery and fraud, and swore to make the two ladies (to whom I refer above) support his position in the matter, although they would have to perjure themselves to do so.

On 11 June, I received an envelope from Wilmington, Delaware. It has no return address so I don't know who sent it. It contained copies of two letters signed by an attorney engaged by Mr. Withrow to challenge my claim (should it be filed) and what appears to be an altered copy of the change-of-beneficiary form executed by my sister. (I have enclosed copies of these papers.) My sister's signature has been nearly completely wiped from the form, and it is possible that the date she signed it has been changed, because I believe she signed it at least two days before she died. In any case, the attorney's assertions that my sister was not competent to execute this change, that I "had" her make the change, are patently false and slanderous. She made the decision to name me beneficiary long before she was under any sedation, without discussing it with me, and she was fully aware when she signed the document and "competent" until her final hour. To refuse to honor her decision would dishonor her memory.

Lisa Withrow was a kind and generous person, a loving mother and a loyal and devoted wife. She worked tirelessly to improve the living standards of her family. She died with dignity and in full command of her faculties. It was her dying wish that I would continue her charities, helping the poorest people and children in Vietnam, which I shall do in her name whether or not I am awarded this benefit. I went to Delaware not to be rewarded, but because I loved my sister and wanted to help her live, and I remained with her to give her love and comfort as she endured pain and faced death.

Very sincerely yours,

Myung P. LeGro

Enclosed: Communications from Kevin Guerke
cc: Jennifer Warren