IN THE UNITED STATES DISTRICT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, Plaintiff, | § § § § | C.A. No. 07-511-LPS |
| v. | § § | |
| JAMES R. WITHROW and MYUNG PHAM LEGRO, Defendants. | § § § § | JURY TRIAL OF 12 DEMANDED |

## JAMES R. WITHROW'S ANSWER TO INTERPLEADER COMPLAINT AND CROSSCLAIM

Defendant James R. Withrow ("Mr. Withrow"), by and through his undersigned counsel, hereby files this Answer and Crossclaim and alleges as follows:

1. Admitted upon information and belief.

2. Admitted upon information and belief. By way of further response, it is unknown whether the Policy is the only life insurance US Life issued to Lisa P. Withrow ("Mrs. Withrow").

3. Admitted.

4. Admitted. By way of further response, Mr. Withrow challenges Myung Pham LeGro's ("LeGro") claim that she is the sole named beneficiary of the Policy.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted upon information and belief. In further response, Mrs. Withrow was literally on her death bed on the date she purportedly signed the change of beneficiary form. She was admitted to Kent General Hospital ("Kent General") on the

18th of May for complications from cancer. On May 23, 2007, she lay incapacitated in Kent General unable to communicate with her family. She was disoriented and confused. By May 23, 2007, Mrs. Withrow was heavily medicated with a combination of narcotic pain killers and hypnotic drugs, including, <u>inter alia,</u> morphine, propoyphene, zolpidem, and dilaudid. LeGro is not entitled and has no legal right to the Policy proceeds. First, LeGro took unfair advantage of Mrs. Withrow through undue influence, duress, misrepresentation, manipulation, and deceit all of which caused Mrs. Withrow to sign a new beneficiary designation form for her Policy naming LeGro sole primary beneficiary. Second, Mrs. Withrow was not sufficiently competent to sign the document and lacked capacity to execute the new beneficiary designation due to the pain she was experiencing, the medication she was taking, and the deteriorated state of her health. Third, Mrs. Withrow's execution of the document was a mistake. She believed she was signing a separate and entirely different insurance document.

    10.    Admitted.

    11.    Admitted.

    12.    Admitted.

    12.[sic] Denied. LeGro specifically disclaimed any rights she may have had to the Policy proceeds when she executed a Stipulated Judgment and Order previously filed with the Court.

    13.    Denied.

    14.    Admitted.

**WHEREFORE**, Mr. Withrow demands judgment in his favor and against Myung Pham LeGro, plus costs, pre and post judgment interest, and attorneys' fees.

**CROSSCLAIM AGAINST MYUNG PHAM LEGRO**

1.      Mr. Withrow and Mrs. Withrow were husband and wife since 1972. Mrs. Withrow died on May 24, 2007. Prior to her death, Mrs. Withrow was employed at Platex Products, Inc. ("Playtex"). Through Playtex, Mrs. Withrow had a life insurance policy from the United States Life Insurance Company in the City of New York ("US Life") under group policy number G – 214756 ("Policy"). At the time of her death, according to US Life, Mrs. Withrow's Policy death benefits totaled $36,400.00.

2.      Mr. Withrow was the sole named primary beneficiary under the Policy from September 14, 1995 until May 23, 2007, the day prior to Mrs. Withrow's death. As of May 23, 2007, Mrs. Withrow's daughter, Victoria M. Hudson, and Mrs. Withrow's son, Michael J. Withrow, were joint secondary beneficiaries of the Policy.

3.      Mrs. Withrow was diagnosed with celiac disease and with T-cell lymphoma, a rare form of cancer, in April 2007. On April 5, 2007, Mrs. Withrow was admitted to Kent General for cancer treatment, including a small bowel resection procedure. She remained at Kent General until April 25, 2007 at which time she was released to a short-term rehabilitation center. She was discharged from the short-term rehabilitation center on April 30, 2007 and continued treatment at home until May 18, 2007. On that date, Mrs. Withrow was again admitted to Kent General and remained there until her death on May 24, 2007.

4.      In the beginning of May 2007, LeGro, Mrs. Withrow's sister, offered to stay with and care for Mrs. Withrow. She moved in to Mr. Withrow's home and began to assert her influence over every aspect of Mrs. Withrow's life.

5.      Over the weeks and days that followed, LeGro began to inform Mrs. Withrow that her family had abandoned her, that her family did not care for her, and that

her family was going to leave her in a nursing home to die. These representations were false and LeGro knew they were false when they were made. Their purpose was to scare and manipulate Mrs. Withrow and to create an adversarial relationship between Mrs. Withrow and her husband and children.

6. Each day after Mrs. Withrow's admittance to Kent General on May 18th her condition worsened. She was in extreme pain. She was heavily medicated. Her doctors prescribed and administered a combination of narcotic pain killers and hypnotic drugs, including, <u>inter alia</u>, morphine, propoyphene, zolpidem, and dilaudid on the days leading up to her death, including May 23, 2007. She could not effectively communicate with her family. If she attempted to speak, it was a mere whisper. Because of the sedation and her deteriorating state of health, she was bedridden and incapacitated. After the medications where administered she was catatonic and barely conscious. Mrs. Withrow was taking numerous other medications to treat her condition in addition to those described above. Mrs. Withrow's condition was so dire she was connected to a feeding tube, an IV line, and a catheter. She was unable to feed herself or to eat solid food. She was severely malnourished and dehydrated.

7. Upon information and belief, Mrs. Withrow's sister, LeGro, stayed with Mrs. Withrow night and day at Kent General from May 18th through the 24th. LeGro spoke for Mrs. Withrow when Mrs. Withrow was unable to communicate due to her condition. She was constantly by Mrs. Withrow's side. She often spoke to Mrs. Withrow in Vietnamese, a language her family did not understand.

8. Prior to May 23, 2007, LeGro communicated directly with Playtex and requested a change of beneficiary form for Mrs. Withrow. A Playtex employee delivered

the change of beneficiary form to LeGro on May 23, 2007.  LeGro completed the form, providing her personal information, including social security number and address.  LeGro gave the form to Mrs. Withrow and instructed Mrs. Withrow to sign the document.  Mrs. Withrow signed the form, which made LeGro the sole primary beneficiary of the Policy.  Mrs. Withrow died the next day.

9. On the date she signed the form, Mrs. Withrow was disoriented, confused, and semiconscious.  She did not understand what she was signing or the legal effect it would have.  Kent General required Mr. Withrow to sign informed consent forms for the procedures she underwent because she was unable to comprehend them.

10. The Playtex employee asked Mrs. Withrow is she knew what she was signing.  Mrs. Withrow did not and could not respond.  The Playtex employee asked Mrs. Withrow if her husband knew what she was doing.  Again, Mrs. Withrow did not and could not respond.  Instead LeGro told the Playtex employee that Mrs. Withrow discussed the change of beneficiary with her husband the night before.  LeGro's representation was false and she knew it was false when she made it.  Mrs. Withrow never discussed a change of beneficiary with Mr. Withrow.

11. At Playtex, Mrs. Withrow had, in addition to the Policy, a life insurance policy that covered her spouse, Mr. Withrow, ("Spousal Policy") should he predecease her.  In early May 2007, Mrs. Withrow determined that she would not survive her husband and no longer wanted to pay for insurance coverage she would never use.  Mrs. Withrow asked Mr. Withrow to contact Playtex to request a form to cancel the Spousal Policy.  Mr. Withrow did so.  LeGro, was staying at the Withrows' home at the time and overheard this communication.

12. When LeGro had Mrs. Withrow sign the change of beneficiary form, Mrs. Withrow believed she was signing a document that cancelled the Spousal Policy. When Playtex attempted to contact Mrs. Withrow regarding the Spousal Policy, LeGro intercepted the call and instead requested the change of beneficiary form. Mrs. Withrow mistakenly signed the change of beneficiary designation on the Policy believing it was the Spousal Policy cancellation.

13. LeGro's status as sole primary beneficiary was obtained through fraud, deception, duress, manipulation, misrepresentation, deceit, and the exercise of undue influence over Mrs. Withrow. The purported change of beneficiary was invalid and of no legal force and effect. Mrs. Withrow did not intend to change her beneficiary. Mrs. Withrow lacked the capacity to understand and appreciate what LeGro was having her sign.

14. LeGro hurriedly left town the day after Mrs. Withrow's death. Mr. Withrow did not know of the change of beneficiary until May 26, 2007 when he received written notice from Playtex. After spending weeks by her sister's side, LeGro did not attend Mrs. Withrow's funeral services.

15. Mrs. Withrow had no reason to change the beneficiary of the Policy.

## COUNT I

### TORTIOUS INTERFERENCE WITH CONTRACT

16. Mr. Withrow repeats and realleges all the allegations above as if set forth at length herein.

17. The Policy is a contract that conferred third party beneficiary rights to Mr. Withrow.

18. LeGro had knowledge of the Policy and Mr. Withrow's rights to the Policy proceeds. Without justification, LeGro intentionally interfered with Mr. Withrow's rights causing US Life to fail to meet its obligations to Mr. Withrow when it failed to pay death benefits to Mr. Withrow upon Mrs. Withrow's death.

19. As a result of LeGro's intentional interference, Mr. Withrow has suffered damage.

## COUNT II

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

20. Mr. Withrow repeats and realleges all the allegations above as if set forth at length herein.

21. LeGro took unfair advantage of Mrs. Withrow's vulnerable and weak physical and mental state. She lied to Mrs. Withrow about her family's intentions and she tricked her into signing a change of beneficiary designation form Mrs. Withrow did not intend to sign. LeGro's extreme and outrageous conduct intentionally and recklessly caused Mr. Withrow severe emotional distress.

22. As a result of LeGro's extreme and outrageous conduct, Mr. Withrow has suffered damage, including extreme mental anguish.

## COUNT III

### BREACH OF CONTRACT

23. Mr. Withrow repeats and realleges all the allegations above as if set forth at length herein.

24. LeGro signed a Stipulated Judgment and Order, which was filed with the Court on or about October 26, 2007. LeGro agreed to the entry of judgment in Mr. Withrow's favor and against her. The Parties agreed to settle the entire case on the terms

in the Stipulated Judgment and Order. The Stipulated Judgment and Order is a binding contract.

25. LeGro breached that agreement when she refused to abide by the terms of the Stipulated Judgment and Order and continued to pursue her claim.

26. As a result of LeGro's breach, Mr. Withrow has suffered damage.

## COUNT IV

### UNJUST ENRICHMENT

27. Mr. Withrow repeats and reallege all the allegations above as if set forth at length herein.

28. LeGro will be unjustly enriched if she receives the Policy proceeds, which will impoverish Mr. Withrow from his rightful claim to the Policy proceeds.

29. LeGro is without justification to receive and retain the Policy proceeds.

30. As a result of LeGro's actions, Mr. Withrow has suffered damage for which no remedy is provided at law.

## COUNT IV

### DECLARATORY JUDGMENT

31. Mr. Withrow repeats and realleges all the allegations above as if set forth at length herein.

32. Mr. Withrow's and LeGro's claim to the Policy creates an actual controversy to determine the sole primary beneficiary of the Policy between two interested parties.

33. The conflicting interests are real and adverse and the controversy is ripe for judicial determination.

34. Mr. Withrow seeks declaration that he is the sole primary beneficiary to the Policy and LeGro has no rights to the proceeds.

**WHEREFORE**, James R. Withrow demands judgment against Myung Pham LeGro as follows:

1). A declaration that the purported change of beneficiary in favor of Myung Pham LeGro was of no legal force and effect, that Myung Pham LeGro has no claim to the Policy proceeds, and that James R. Withrow is the sole primary beneficiary of the Policy and is entitled to receive the Policy proceeds;

2). An award of compensatory damages, including fees paid to US Life and pain, suffering, and mental anguish;

3). An award of costs, pre and post judgment interest, attorney's fees, as well as any other compensatory damages proved at trial;

4). An award of punitive damages; and,

5). An award of such other relief the Court deems just and proper.

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Kevin A. Guerke
JAMES S. GREEN (DE 0481)
KEVIN A. GUERKE (DE 4096)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for Defendant
James R. Withrow

DATED: December 7, 2007

62311 v1

9

## CERTIFICATE OF SERVICE

I, Kevin A. Guerke, Esquire, hereby certify that on this 7th day of December 2007, I filed the foregoing *James R. Withrow's Answer to Interpleader Complaint and Crossclaim* with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record:

| | |
|---|---|
| Seth A. Neiderman, Esq. | Carolyn Hake, Esq. |
| Citizens Bank Center | ASHBY & GEDDES |
| 919 N. Market Street, Suite 1300 | 500 Delaware Avenue |
| P.O. 2323 | P.O. Box 1150 |
| Wilmington, DE  19899-2323 | Wilmington, DE  19899 |

/s/ Kevin A. Guerke
Kevin A. Guerke (ID No. 4096)

62382v1