## IN THE UNITED STATED DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

THE UNITED STATES LIFE
INSURANCE COMPANY
IN THE CITY OF NEW YORK,

    Plaintiff,

    v.

JAMES R. WITHROW and
MYUNG PHAM LEGRO.

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 07-511-LPS

## DEFENDANT MYUNG PHAM LEGRO'S OPENING BRIEF IN OPPOSITION TO JAMES R. WITHROW'S MOTION ENFORCE STIPULATED JUDGMENT

J. Breck Smith, Esquire (No. 2937)
Seth Niederman, Esquire (No. 4588)
Sophia Siddiqui, Esquire (No. 4914)
**FOX ROTHSCHILD LLP**
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4211

Attorneys for Defendant, Myung Pham Legro

Date:  December 20, 2007

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS...................................................................1

II.  SUMMARY OF ARGUMENT...........................................................................................2

III. STATEMENT OF FACTS................................................................................................3

IV.  ARGUMENT ...................................................................................................................10

    A. Standard of Review ....................................................................................................10

    B. The Stipulated Judgment And Order is Not Valid or Enforceable Under Delaware
       Law. ...........................................................................................................................10

    C. A Valid and Binding Contract Was Never Entered Into By The Parties. ..................12

    D. The Stipulated Judgment and Order is An Unenforceable Contract Because   Myung
       Has Met The Elements of The Defense of Duress. ....................................................12

    E. Withrow Should Not Be Awarded Attorneys' Fees Associated With Bringing His
       Motion to Enforce Stipulated Judgment And Order.   ...............................................14

V.   CONCLUSION ................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page**

Haft v. Dart Grp. Corp., 841 F.Supp. 549, 573 (D.Del. 1993)…………………………………..12

Intellisource Grp., v. Williams,
    1999 WL 615114, at *5 (D.Del. Aug. 11, 1999) …………………………………..........10

Leonard v. University of Delaware,
    204 F.Supp.2d 784, 787 (D.Del. 2002) ………………………………………..11,12,14,15

Ryan v. Weiner,
    610 A.2d 1377, 1380 (Del. Ch. 1992) …………………………………………………..12,14

In re: Elonex Phase II Power Mgmt. Litig.,
    2003 WL 21460391, at *3 (D.Del. 2003) ………………………………………...10,14,15

Hobbs v. Am. Investors Mgmt., Inc.,
    576 F.2d 29, 35 (3d Cir. 1978) ………………………………………………………….14

WM1A 239802v3 12/20/07

I.      **NATURE AND STAGE OF PROCEEDINGS**

On August 21, 2007, United State Life Insurance Company in the City of New York ("US Life") filed an Interpleader Complaint.  On August 27, 2007, US Life filed a Motion Authorizing Payment of Funds Into Court.  On October 26, 2007, US Life filed a Stipulated Judgment and Order with the Court.

On October 31, 2007, Magistrate Judge Leonard P. Stark of the United States Court for the District of Delaware held a teleconference to address Plaintiff's Interpleader Complaint.  Counsel for US Life and counsel for Defendant James R. Withrow ("Withrow") participated in the teleconference.  Defendant Myung Pham LeGro ("Myung") did not participate in the teleconference.  During the teleconference, the Court declined to sign the Stipulated Judgment and Order.

On November 28, 2007, the United States District Court for the District of Delaware granted US Life's Motion for Deposit of Funds with the Clerk of Court and Requiring Defendants to Interplead.  Withrow filed an Answer to Interpleader Complaint and Crossclaim on December 7, 2007.  Myung filed her Answer to Interpleader Complaint on the same date.

## II.    <u>SUMMARY OF ARGUMENT</u>

The Stipulated Judgment and Order signed is not a valid and binding agreement under Delaware law because the parties did not mutually assent to its terms and it was never signed by the Court.  Moreover, Myung signed the Stipulated Judgment and Order under duress.

III.    **STATEMENT OF FACTS**

Myung Pham LeGro ("Myung") is a Vietnamese immigrant who came to the United States in 1975. Seven of her brothers and sisters, including her sister, Lisa P. Withrow ("Lisa"), emigrated to the United States. Lisa was married to James R. Withrow ("Withrow") before her death on May 24, 2007.

Lisa was employed by Platex Products, Inc. ("Playtex"). In connection with her employment, Lisa was issued a United States Life Insurance Company in the City of New York life insurance policy (the "Policy").

In April, 2007, Myung received a call from her family in Vietnam that her sister Lisa was very sick and was going to die. Myung, who lived in Herdon, Virginia, immediately contacted her sister. Lisa was crying on the phone, stating that she was in severe pain, could not eat, and feared she had cancer. Lisa also said that she wanted a divorce from her husband.

Myung advised her sister to go to the hospital immediately. Lisa was diagnosed with cancer and had abdominal surgery shortly thereafter. On April 28, 2007, Myung and her husband, Colonel William E. LeGro, USA Ret., drove from Virginia to visit Lisa in the hospital. After returning home to Virginia, Myung told Withrow that she would return to visit Lisa soon because Lisa was alone and very unhappy. Withrow told Myung to wait a few days because he was going to move her to a cancer recovery center in Wilmington, Delaware.

Approximately one day later, Myung contacted Withrow again regarding her sister's condition only to find out that Withrow had placed Lisa in a nursing home in Dover, Delaware. When Myung spoke with Lisa, she said that she had been left in the nursing home to die and that her husband and daughter did not want to care for her at home. Lisa also told Myung that Withrow had said he wanted Lisa to die. Lisa said that she wanted to divorce Withrow and that

3

he was an irresponsible husband, who ignored her illness and never took the time to take her to the right doctors. Myung assured her sister if she was released, she would come to stay with her.

Two days later, in early May, 2007, Withrow contacted Myung and told her Lisa had checked herself out of the nursing home. Withrow requested her help. Myung traveled to Delaware to take care of her sister. Lisa's doctor advised that Lisa was well enough to go home. Consistent with Lisa's wishes, Myung took Lisa back to her home in Delaware and cared for her day and night, sleeping on the floor next to her bed.

On or about May 11, 2007, Withrow, Lisa and Myung traveled to the Social Security Office in Delaware in order to claim her social security disability benefits, which she could claim upon her turning sixty-five years of age. During that car ride, Lisa told Withrow that she was going to change the beneficiary on the Policy from Withrow to someone else because Withrow would receive several other benefits when she died. Lisa did not indicate to Myung or Withrow who the new beneficiary would be. Upon arriving at the Social Security Office, Lisa signed the papers to claim her social security benefits. Upon arriving home, Lisa told Myung that she had asked Playtex to mail her a form, and that Myung should check the mailbox. The form did not arrive.

A week after arriving home, in mid-May, 2007, Lisa's condition worsened and she returned to the hospital. Myung stayed by her side at the hospital, helping her with meals, keeping her clean, and providing emotional support. Lisa was lucid and mentally competent until the day of her death. She greeted her many visitors enthusiastically and conversed alertly with the doctors and nurses. Although she was physically sick, heavy pain medication was not administered until twelve hours before Lisa's death so that she would die peacefully. Before that time, Lisa only took Tylenol for the pain. Lisa always asked the nurses and her sister what

4

medications they were giving her and what they were for because she did not want to take anything that would put her to sleep.  Lisa told Myung she did not want to die in her sleep.

On or about May 21, 2007, a representative from Playtex came to the hospital with an envelope for Lisa, who was asleep.  The Playtex representative handed the envelope to Myung and asked that she give it to her sister when she awoke.  The representative said that he could not wait for Lisa to awaken and would return tomorrow.  Myung gave the envelope to Lisa when she awoke, Lisa looked at it, and asked Myung to put the envelope in her bag until later.

The next day, two or three days before Lisa's death on May 24, 2007, two women representatives from Playtex arrived at the hospital.  One of the representatives helped Lisa fill out the change-in-beneficiary form and both representatives witnessed Lisa fill out and sign the form, naming Myung as the beneficiary of the Policy.  Myung was present as this happened. Lisa asked Myung to give the representative her address and social security number.  Myung handed the Playtex representative her driver's license and told them her social security number. Myung did not assist in filling out the change of beneficiary form other than providing this information.  The Playtex representatives then took the change in beneficiary form with them.

Watching her sister die was physically and emotionally exhausting for Myung.  During that time, Myung lost twenty pounds.  She was so distraught, she could not attend Lisa's funeral.

On June 11, 2007, Myung received an envelope from an unknown sender in Wilmington, Delaware.  It contained two letters from Withrow's attorney explaining Withrow's challenge to Myung's right to the proceeds of the Policy, and enclosing a copy of the change in beneficiary form.  See Copy of Change In Beneficiary Form attached hereto as Exhibit "A".  Myung noticed that the date on the change in beneficiary form seemed to have been altered because her sister had signed the form at least two days before her death.  Thereafter, on June 16, 2007, Myung

sent a letter to US Life, which her husband helped her draft, explaining the events as they had occurred.  See Letter from Myung Pham LeGro to the US Life dated June 16, 2007 (also docketed with U.S. District Court for the District of Delaware) attached hereto as Exhibit "B").

In September, 2007, Myung was contacted by counsel for the United States Life Insurance Company in the City of New York ("US Life").  Counsel for US Life spoke with Myung and her husband and informed them that Withrow was challenging Myung's right to receive the proceeds of the Policy.  Myung did not want to endure a fight over the Policy benefits and was afraid of being sued.  Myung loved her sister and did not care for the money.  Thus, she informed counsel for US Life by phone that she would give up her right to the proceeds of the Policy.

Myung did not engage a lawyer because she did not think that it was necessary where she had done nothing wrong.  On September 7, 2007, Myung received a threatening and disturbing letter from Withrow.  See Letter from James R. Withrow to Myung Pham LeGro dated September 7, 2007 attached hereto as Exhibit "C".  In sum, Withrow alleged that Lisa was not competent to sign the change in beneficiary form, and that Myung took advantage of her sister's condition in order to obtain the proceeds of the Policy.  See Exhibit "C" at p. 2 ("But, the best part of a jury case will be revealing your motivations for having the life insurance beneficiary designation change!  You'll just have to wait until we appear in court to know what I have planned in this respect.  Although it should be rather obvious.").  Myung was shocked by Withrow's allegations.  See Exhibit "C" at p. 3 ("I look forward to confronting you in a court of law!  It will certainly be a pleasure.  Then, when the procedure is settled, I will file another lawsuit against you for "Manipulation of a Mentally Infirm Person with intent of financial gain.

6

I will [e]nsure that we have a courtroom full of Lisa's family, friends, coworkers who knew us both quite well!").

On September 21, 2007, Myung received a letter from counsel for US Life enclosing a draft Stipulated Judgment and Order relinquishing any right she had to the proceeds of the Policy. See Letter from Carolyn S. Hake, Esquire to Myung Pham Legro dated September 21, 2007 attached hereto as Exhibit "D". The letter asked for Myung's signature and notified her of the extension of time for Defendants to answer the Interpleader Complaint until September 28, 2007.

Myung responded to Ms. Hake's letter on September 27, 2007:

> I have told you that I intend to relinquish my right as beneficiary of my late sister's insurance policy, and I still plan to do so. However, before I sign the agreement you sent to me, I wish to be assured that you have had the form my sister signed naming my the beneficiary carefully examined. I have reason to suspect that it has been altered to mislead and to reflect that my sister signed it on the day before her death, when in fact I believe she signed it at least two days before she died . . .

> I do not want to fight for this money, to endure the stress of a trial far from my home, or to see Mr. Withrow or Delaware ever again. But I do not believe he should profit from fraud or forgery. That is what I believe may be happening here. If you can assure me that the circled date, "5/23/07," was written on the original document by my sister, and that this has been confirmed by a qualified expert, I shall sign the agreement you sent me.

See Letter from Myung Pham LeGro dated September 27, 2007 to Carolyn S. Hake, Esquire (docketed with U.S. District Court for the District of Delaware) attached hereto as Exhibit "E".

On October 4, 2007, counsel for US Life responded by letter to Myung that they could not provide any assurances to her because they had no interest in the proceeds of the Policy, and litigation would proceed in the event she did decided not to sign the Stipulated Judgment and Order. See Letter from Counsel for US Life dated October 4, 2007 attached hereto as Exhibit

"F".  Counsel for US Life also indicated that responses to US Life's Interpleader Complaint and

Motion would be due on November 1, 2007 in the event that Myung did not sign the Stipulated

Judgment and Order.  On October 15, 2007, Myung sent another letter to counsel for US Life,

where she stated in pertinent part:

> You may disburse the proceeds as you see fit.  I want nothing more
> to do with this case or with Mr. Withrow.  It is not my way, or the
> Vietnamese way, to participate publicly in a family dispute.  Mr.
> Withrow has threatened me in writing, with a lawsuit after this
> case is resolved, and he has threatened the Playtex employees who
> witnessed my sister's signature on the change-of-beneficiary form.
> Perhaps he will relent after he receives the money.

See Letter from Myung Pham LeGro dated October 15, 2007 to Carolyn S. Hake, Esquire

attached hereto as Exhibit "G".  Myung felt threatened into giving up her rights and did not feel

it was culturally appropriate to go to Court and endure a public battle over the proceeds of her

sister's life insurance policy.  Thereafter, Myung signed the Stipulated Judgment and Order.

On October 26, 2007, US Life filed the Stipulated Judgment and Order with the Court.

On October 31, 2007, Magistrate Judge Leonard P. Stark of the United States District Court In

and For the District of Delaware held a teleconference with counsel for US Life and counsel for

Withrow.  See Transcript of Teleconference with Judge Stark dated October 31, 2007 in Civil

Action No. 07-511 attached hereto as Exhibit "H".  Myung was not present on the call.  Judge

Stark commented on the fact that Myung did not participate in the call: "I think I need to hear

from her directly, one way or another, whether she actually is consenting.  I'm not comfortable

getting that consent through one of the parties.  See Exhibit "H" at p. 4, lines 21-24.  Moreover,

Judge Stark rejected the suggestion by Withrow's counsel that the "matter is essentially closed."

See Exhibit "H" at p. 5, lines 6-10.  Judge Stark stated:

> Well, the problem I have with that is in the correspondence I
> received directly from Ms. LeGro, and I take it obviously from Ms.
> Hake that there has been subsequent correspondence, but, of

course, the court hasn't seen it, she was reluctant at best to give her claim, and in fact, seems to be willing to give up her claim only upon some sort of assurance as to whether the documents that insurance company has received were actually executed as they appeared to have been executed.

See Exhibit "H" at p. 5, lines 11-19.

On November 25, 2007, Myung received another threatening letter from Withrow. See Letter from James R. Withrow to Myung Pham LeGro dated November 25, 2007 attached hereto as Exhibit "I". In this letter, Withrow made a number of false allegations against Myung attacking her character, saying that she took advantage of her frail sister for her own financial gain, and notifying her that he would tell her family what she had allegedly done. See Exhibit "I" at p. 1 ("Lieu will testify that you called and promised her a share of the insurance if it was awarded to you. This call was made well after Lisa's death! Some of your family believe that the reason you are continuing the insurance claim is because of the costs of Theodora's college expenses ($44,000 per year)"); see also Exhibit "I" at p. 2 ("I have already talked to Linda this past week. She has promised to fly her from Colorado to the trial to testify against you. In her opinion, you are quite capable of pulling some [] con or scam to get Lisa's life insurance.").

Upon reading Withrow's letter and consulting with her husband, Myung decided that she must challenge Withrow in order to clear her name. Withrow had gone so far as to spread lies to Myung's family. At Lisa's funeral, Withrow told Myung's sister and brother to call Myung's family in Vietnam and tell them that Myung had stolen $80,000 from the Policy and that they would have to return the money or be in serious trouble with the police. Myung could not let her name be tarnished in this way. Myung retained Fox Rothschild LLP as counsel in this action and consented to this Court's jurisdiction on November 29, 2007. Myung filed her Answer to the

9

Interpleader Complaint on December 7, 2007.  This is Myung's Response to James R. Withrow's Motion to Enforce Stipulated Judgment and Order.[1]

## IV.    ARGUMENT

### A.  Standard of Review

A motion to enforce a settlement agreement closely resembles a motion for summary judgment, therefore, a similar standard applies.  Tierman v. Deroe, 923 F.2d 1024, 1031 (3d Cir. 1991).  "The Court must treat all the non-movant's assertions as true, and 'when these assertions conflict with those of the movant, the former must receive the benefit of the doubt."  In re Elonex Phase II Power Mgmt. Litig., 2003 WL 21460391 (D.Del. 2003).

### B.    The Stipulated Judgment And Order is Not Valid or Enforceable Under Delaware Law.

Myung did not enter into a valid and binding settlement agreement under Delaware law.  "It is a well established principle of contract law that if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to . . . the preliminary negotiations and agreements do not constitute a contract."  Intellisource Grp., Inc. v. Williams, 1999 WL 615114, at *5 (D.Del. Aug. 11, 1999).  Myung's letter to US Life dated September 27, 2007 reflects that she wanted assurances that no forgery or fraud had occurred before entering into the Stipulated Judgment and Order:

> However, before I sign the agreement you sent to me, I wish to be assured that you have had the form my sister signed naming my beneficiary carefully examined.  I have reason to suspect that it has been altered to mislead and to reflect that my sister signed it on the

---

[1] Attached hereto as Exhibit J and incorporated by reference is the affidavit of Myung Pham Legro in support of the Response In Opposition To Motion To Enforce Stipulated Judgment And Order.

> day before her death, when in fact I believe she signed it at least two days before she died . . .
>
> I do not want to fight for this money, to endure the stress of a trial far from my home, or to see Mr. Withrow or Delaware ever again. But I do not believe he should profit from fraud or forgery. That is what I believe may be happening here. If you can assure me that the circled date, "5/23/07," was written on the original document by my sister, and that this has been confirmed by a qualified expert, I shall sign the agreement you sent me.

See Exhibit "E".

A reasonable person would not conclude that Myung had relinquished her rights to the proceeds of the Policy. See Leonard v. University of Delaware, 204 F.Supp.2d 784, 787 (D.Del. 2002) ("Under Delaware law, a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms."). She wanted further assurances that fraud had not taken place. Moreover, she was not represented by an attorney, and she continually expressed reservations about entering into the Stipulate Judgment and Order.

The Court did not sign the Stipulated Judgment and Order during its October 31, 2007 teleconference with the parties to this action for similar reasons:

> Well, the problem I have with that is in the correspondence I received directly from Ms. LeGro . . . she was reluctant at best to give up her claim, and in fact, seems to be willing to give up her claim only upon some sort of assurance as to whether the documents that insurance company has received were actually executed as they appeared to have been executed.

See Exhibit "H" at p. 5, lines 11-19.

Because the parties never reached a complete agreement, as exhibited by Myung's letter, the Stipulated Judgment and Order should not be enforced by the Court.

WM1A 239802v3 12/20/07

Moreover, the Court recognized the impropriety in giving effect to an alleged settlement agreement where one of the parties had expressed reservations with entering into the agreement. See Leonard, 204 F.Supp.2d at 786 ("[c]ourts should not summarily enforce purported settlement agreements, in the absence of an evidentiary hearing, where material facts concerning the existence or terms of an agreement to settle are in dispute."). In light of Myung and Withrow's differing factual accounts of the situation, the Court should not enforce an unsigned Stipulated Judgment and Order, but should instead conduct an evidentiary hearing in this matter.

**C.**    **A Valid and Binding Contract Was Never Entered Into By The Parties.**

Myung never entered into a valid contract with Withrow or US Life. As stated earlier, a reasonable person would not conclude that the parties mutually consented to the terms of the agreement. Myung continued to disagree with the forgery or fraud she believed has been committed and sought assurances that this issue would be rectified. See Exh. "E". Moreover, Myung received absolutely **no** consideration for her alleged agreement to relinquish her right to the proceeds of the Policy. See Haft v. Dart Grp. Corp., 841 F.Supp. 549, 573 (D.Del. 1993) ("It is a fundamental tenet of contract law that a valid contract requires good or valuable consideration.). "When consideration is lacking, there was never a contract at all." Id. at 573, n.30. Thus, a contract was never formed by the parties. Further, the Court never signed an the Stipulated Judgment and Order, making it unenforceable.

**D.**    **The Stipulated Judgment and Order is An Unenforceable Contract Because Myung Has Met The Elements of The Defense of Duress.**

"[A] lack of legal capacity or the existence of duress can lead a court to declare a promise unenforceable or a transfer voidable." Ryan v. Weiner, 610 A.2d 1377, 1380 (Del. Ch. 1992). To prove duress, a party must prove: "(1) an improper threat, (2) which overcame his free will,

and (3) left him with no reasonable alternative to protect his interest." Leonard v. University of Delaware, 204 F.Supp.2d 784 (D.Del. 2002).

In this case, Myung was improperly threatened by Withrow, evident from his letter dated September 7, 2007. His letter states, in pertinent part:

> I look forward to confronting you in a court of law! It will certainly be a pleasure. Then when that procedure is settled, I will file another lawsuit against you for "Manipulation of a Mentally Infirm Person with the intent of financial gain . . . I will [e]nsure that we have a courtroom full of Lisa's family, friends, coworkers who knew us both quite well! Looking forward to a court date.

See Exhibit "C" at p. 3.

Her letter to US Life dated October 15, 2007, immediately prior to her signing of the Stipulated Judgment and Order, similarly reflects that Myung felt threatened into giving up her rights:

> Mr. Withrow has threatened me in writing, with a lawsuit after this case is resolved, and he has threatened the Playtex employees who witnessed my sister's signature on the change-of-beneficiary form. Perhaps he will relent after he receives the money.

See Exhibit "G".

Myung, a Vietnamese immigrant, was confused by the calls and letters she received from counsel for US Life. She did not have a lawyer. She was afraid of the threats by Withrow and did not understand the explanations that counsel for US Life provided to her. She was afraid that she would be sued and that her family would be drawn into the litigation. All of these factors overcame her free will and left her no reasonable alternative but to sign the Stipulated Judgment and Order.[2]

---

[2] Her husband assisted her in drafting her letter to US Life dated June 16, 2007 explaining her side of the story. See Exhibit "B".

13

Similarly, the Court recognized that it was improper for the Court to enter the Stipulated Judgment and Order where Myung "was reluctant at best to give up her claim". See Exhibit "H" at p. 5, lines 12-13.

The circumstances of this transaction raise an inference that some impropriety may have occurred. In regards to the defense of duress, the Court has stated that "there may be such unconscionable or inadequacy in a bargain, as to demonstrate some gross imposition or undue influence; and in such cases Courts of Equity ought to interfere upon satisfactory ground of fraud." Ryan, 610 A.2d at 1381. Withrow alleges that Myung relinquished her right to the proceeds of the Policy by signing the Stipulated Judgment and Order. Admittedly, she received no consideration for this relinquishment of her rights. See Withrow's Motion to Enforce Stipulated Judgment at p. 8. Based upon the lack of any consideration, and the threats Withrow levied against Myung, impropriety did occur.

Myung has demonstrated the elements of the defense of duress. Thus, the Court should hold the alleged settlement agreement entered unenforceable.

### E. Withrow Should Not Be Awarded Attorneys' Fees Associated With Bringing His Motion to Enforce Stipulated Judgment And Order.

The cases cited by Withrow are inapposite to the circumstances of this case. For example, in In re: Elonex Phase II Power Mgmt. Litig., 2003 WL 21460391, at *3 (D.Del. 2003), the Court held that "refusal to abide by the terms of a settlement agreement may constitute bad faith, entitling the wronged party to attorneys' fees." Id. (internal citations omitted). However, the Court noted that the defendant's reasons for refusing to abide by the terms of the settlement agreement were "frivolous" where defendant refused to comply with its obligations without court intervention once, and again refused to comply a second time. Id. at *4.

14

Myung  is not refusing to comply with the terms of the Stipulated Judgment and Order in bad faith.  She has a valid, good faith reason to oppose Withrow's Motion, and her opposition to Withrow's Motion is by no means frivolous.

"Attorneys' fees and costs are not ordinarily recoverable and unless specifically authorized by statute are awarded only in extraordinary cases."  See Leonard, 204 F. Supp. at 789 (quoting Hobbs v. Am. Investors Mgmt., Inc., 576 F.2d 29, 35 (3d Cir. 1978)).  Defendant cites Leonard for the proposition that attorneys' fees should be awarded.  Withrow's Motion at p. 10.  However, in that case, the Court labeled defendant's behavior "egregious", explaining:

> It can no be clearer to the court that Leonard is using settlement as the proverbial carrot, which he is tantalizingly dangling in front of the defendants, but has no intention of giving to them.  Based on his new requests, and his earlier behavior, the court concludes that Leonard is not adverse to entering into a binding agreement with the defendants, watching the defendants fulfill their non-minimal obligations, and then later denying there is an agreement.

Id. at 789-790.

Thus, in Leonard, the Court sanctioned a defendant who used settlement to force the plaintiff to perform certain obligations, and then denied that a settlement agreement existed.  Myung has not engaged in such "egregious" behavior.  The facts of this case are in no way similar to the bad faith displayed by the defendants in Elonex or Leonard.  Myung has a good faith argument that the Stipulated Judgment and Order should not be enforced.  Therefore, the Court should not award Withrow with attorneys' fees associated with filing his Motion.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Myung Pham LeGro respectfully request that the Court

deny James R. Withrow's Motion to Enforce Stipulated Judgment and Order.

**FOX ROTHSCHILD LLP**

*   /s/  Seth A. Niederman, Esquire   *
J. Breck Smith, Esquire (No. 2937)
Seth Niederman, Esquire (No. 4588)
Sophia Siddiqui, Esquire (No. 4914)
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4211

Attorneys for Defendant, Myung Pham Legro

Date:  December 20, 2007

16

EXHIBIT A

**SEALED DOCUMENT**

EXHIBIT B

Myung Pham LeGro
2018 Maleady Drive
Herndon, Virginia 20170
16 June 2007

The United States Life Insurance Company
Neptune, NJ 07754
Reference: Group policy # G214756

Gentlemen:

      Enclosed you will find my claim as beneficiary of the life insurance policy of my sister, Lisa Withrow, who passed away, her frail hand in mine, on 24 May, 2007. My sister's husband, James Withrow, has made some egregiously false statements about my sister and me and it is my duty to set the record straight. In late April, Lisa underwent major abdominal surgery for cancer. On 28 April my husband (Col. William E. LeGro, USA Ret.) and I drove up from our home in Virginia to visit her in the hospital. Shortly after we returned home, we called Mr. Withrow to tell him that I would return to visit Lisa again soon because she was alone and very unhappy. He told me to wait a few days because he was going to move her to a cancer recovery center in Wilmington. I was so worried for my sister that I called him a day or so later and he told us that he and their daughter had moved Lisa to a nursing home because they could not care for her at home, although they certainly had the resources to do so. My husband and I returned to Dover on the following weekend to visit her in the nursing home. She was very sad, feeling that she had been left there to die, abandoned by her husband and family. I assured her that if she were released, I would come up to stay with her in her home. About two days later Mr. Withrow called and told me that Lisa had checked herself out of the nursing home, and he asked for my help. The same day my husband drove me back to Delaware where I remained with my sister, night and day, until she died.

      I do not know when she made the decision to name me as beneficiary, but I recall clearly hearing her tell her husband that she was going to remove him as beneficiary. I was staying with her every moment, day and night, sleeping on the floor beside her bed, and caring for her every need. She told me that she was going to leave me a little money so I could continue to give money to her charities and help poor people in Vietnam, but she never told me how much money or how she was going to do it. I told her that I did not want to make any trouble in her family over money, that all I wanted was for her to get well and to be able to travel again to Vietnam and help the people herself. She said that her husband would get plenty of money from her other policy and investments and I should not worry about that; she knew how to handle it.

      One Friday in May—I believe it was the 11th—Mr. Withrow took her to conduct some business at the Social Security office. I went along to help her, and I was in the back seat of the car when she told him that he didn't need the money from her policy, the one on which she paid $11 per month, and that she was going to change to beneficiary. When we got home, she told me that she had asked someone at Playtex to mail a change-of-beneficiary form to her, and she asked me to check the mailbox for it. It never came.

Her condition worsened and she was readmitted to the hospital. I moved into the hospital room with her, sleeping on the couch, helping her with her meals, keeping her clean, and comforting her as best I could, not even leaving her room for meals.

A few days after she was readmitted, a gentleman came to see her. She was sleeping at the time, so I asked him if he would like to wait until she awakened. He said that he could not but would come back again. Before he left he gave me brown envelope to give to my sister. I showed the envelope to my sister when she woke up. She looked at the paper inside, put it back in the envelope, and asked me to put it in my bag until she asked for it.

A day or so after the gentleman left, two ladies from Playtex came to visit. They apparently knew her well, for they embraced her and said some kind words to her. She asked me for the envelope, which I gave to her. The ladies helped my sister fill out the form. My sister asked me to give them my address and social security number, which I did. My sister signed the form, and I believe the ladies signed it as witnesses. Then the ladies said goodbye and left with the form.

I was too emotionally and physically exhausted to attend the funeral but several of my relatives were there, including my brother and two of my sisters. They told me that Mr. Withrow raged about the policy, accused me of forgery and fraud, and swore to make the two ladies (to whom I refer above) support his position in the matter, although they would have to perjure themselves to do so.

On 11 June, I received an envelope from Wilmington, Delaware. It has no return address so I don't know who sent it. It contained copies of two letters signed by an attorney engaged by Mr. Withrow to challenge my claim (should it be filed) and what appears to be an altered copy of the change-of-beneficiary form executed by my sister. (I have enclosed copies of these papers.) My sister's signature has been nearly completely wiped from the form, and it is possible that the date she signed it has been changed, because I believe she signed it at least two days before she died. In any case, the attorney's assertions that my sister was not competent to execute this change, that I "had" her make the change, are patently false and slanderous. She made the decision to name me beneficiary long before she was under any sedation, without discussing it with me, and she was fully aware when she signed the document and "competent" until her final hour. To refuse to honor her decision would dishonor her memory.

Lisa Withrow was a kind and generous person, a loving mother and a loyal and devoted wife. She worked tirelessly to improve the living standards of her family. She died with dignity and in full command of her faculties. It was her dying wish that I would continue her charities, helping the poorest people and children in Vietnam, which I shall do in her name whether or not I am awarded this benefit. I went to Delaware not to be rewarded, but because I loved my sister and wanted to help her live, and I remained with her to give her love and comfort as she endured pain and faced death.

Very sincerely yours,

Myung P. LeGro

Enclosed: Communications from Kevin Guerke
cc: Jennifer Warren

EXHIBIT C

FROM:   JAMES R. WITHROW                       7 September 2007
        1077 Skeeter Neck Road
        Frederica DE 19946

TO: MYUNG PHAM LEGRO
    2018 Maleady Drive
    Herndon VA 20170

I had convinced myself earlier never to again communicate
with you.

But, I want you to think about some things while awaiting
a court date.

As promised, I have hired one of the best law firms in Delaware.
As promised, I am challenging the change of benefits on 23 May
2007 and Lisa's competency to execute that document.

The case will be handled by a U.S. District Court in Delaware.

I look forward to the opportunity of a JURY TRIAL.  I will
have your sisters/brothers present to attest to your character
and to offer their opinions as to the change of the life
insurance beneficiary designation.

I have two witnesses that will testify that, when I asked
if you had notified The of Lisa's death, you responded that
you had.  Had I not called The on Sunday, Lisa would have
been buried without his knowledge (making it appear that was
his intent not to attend services and pay last respects).  But,
obviously that was your intent.  The will certainly be present!

I'm sure that you will appreciate the testimony of your sister,
Linda, as to your character.

Then, there are the opinions of both the Surgeon and PCP
relating to Lisa's competency on on 23 May 2007.

Next, there are the many Playtex Coworkers/supervisor!

And, finally, you forget that, on 21 May 2007, the hospital
had determined that Lisa was not competent sufficiently to
authorize the procedures scheduled for that day.  I signed
as her husband/legal representative on that date. Again, I
had to sign for her on 23 May 2007 releasing her to hospice.

But, the best part of a jury case will be revealing your
motivations for having the life insurance beneficiary
designation change!

You'll just have to wait until we appear in court to know
what I have planned in this respect.     Although it should
be rather obvious.

I am doing this because I trusted you.   Never in my wildest
imagination would I have thought that you would have Lisa
change her life insurance to you under the circumstances.

Had Lisa discussed this with me, I would have had no problem
with it at all.   Had she asked me to share the insurance
proceeds with you, I would certainly have honored her wishes.

But, to have it done secretly without my knowlege was a violation
of a sacred trust!.

Then, although you care so much for your dear sister, you (and
none of your family) came to pay your last respects.   I'm sure
that you have your own logical excuses.

But, just imagine in a court how this will be perceived.   If
you cared so much, and Lisa cared so much for you as to have
given you her life insurance,   what would be an acceptable
reason for not attending services/funeral/burial.

Remember that on Friday after Lisa's death, I inquired as to
when you and Bill would be returning.   I advised that I wanted
the services on Monday.   Bill responded that he would probably
have to work at Home Depot!

Then there is the issue of you having Theodora send flowers to
Lisa on Mothers' Day.   That was an insult.   It was not our custom
to give each other flowers.   Lisa always insisted on money for
all holidays to go to Dover Downs!

In hindsight, it was rather obvious what you needed the money for.
And, you presumed that the amount was much higher than the
$36,400.00.   I am told that you called and discussed amounts,,
etc with family in Vietnam.

Then, thre is the feedback as to discussions, characterizations, etc., that you relayed to the family in Vietnam.

To the majority of your family, you are now considered as the "evil one".

I look forward to confronting you in a court of law!  It will certainly be a pleasure.

Then, when that procedure is settled, I will file another lawsuit against you for "Manipulation of a Mentally Infirm Person with the intent of financial gain".  Discuss this one with your attorney...considering that her treating physicians/ health care providers opinion is that Lisa was not competent on 23 May 2007!

I will insure that we have a courtroom full of Lisa's family, friends, coworkers who knew us both quite well!

Looking forward to a court date.

                    JIM WITHROW

EXHIBIT D

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

September 21, 2007

**VIA FEDERAL EXPRESS**

Myung Pham LeGro
2018 Maleady Drive
Herndon, Virginia 20170

      *Re:*     *The United States Life Ins. Co. in the City of New York v. James R. Withrow*
              *and Myung Pham LeGro; C.A. No. 07-511*

Dear Ms. LeGro:

      Enclosed is the draft Stipulated Judgment and Order that I discussed with your husband on the telephone last week. Please review it and if you agree with the terms, please give me a call.

      Also, as I indicated on the phone to your husband, I represent The United States Life Insurance Company in the City of New York's interests only and my sole advice to you is to obtain an attorney if you so desire. Based on my conversation with your husband, it is my understanding that you wish to enter into this arrangement. If I am not correct, please let me know immediately and US Life will proceed with this case.

      Finally, US Life has agreed to give the defendants in this action an extension of time to respond to the Interpleader Complaint (and US Life's Motion for an Order authorizing payment of funds into Court, granting attorneys' fees and authorizing discharge from further liability and dismissal from action) until September 28, 2007 to allow the parties time to finalize and enter into the Stipulated Judgment and Order. In the event that the Stipulated Judgment and Order is not finalized prior to September 28th, we can discuss a further extension of time if necessary.

      I look forward to hearing from you soon.

                        Very truly yours,

                        Carolyn S. Hake

Enclosure
184400.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES LIFE INSURANCE  )
COMPANY IN THE CITY OF NEW YORK,  )
                                               )
                Plaintiff,         )
                                              )
                v.                )      C.A. No. 07-511 (***)
                                              )
JAMES R. WITHROW and           )
MYUNG PHAM LEGRO,            )
                                              )
                Defendants.    )
                                              )

## STIPULATED JUDGMENT AND ORDER

      WHEREAS, on August 21, 2007, Plaintiff, The United States Life Insurance Company in

the City of New York ("US Life"), filed this interpleader action pursuant to Fed. R. Civ. P. 22

and 28 U.S.C. § 1335 against Defendants James P. Withrow and Myung Pham LeGro in order to

obtain a Court determination as to the proper claimant to the life insurance benefits under the

combined basic and supplemental life insurance policy that US Life issued to Lisa P. Withrow in

the amount of $36,400.00 (the "Policy"); and

      WHEREAS, US Life has been caused to expend approximately $1,425.00 in fees and

expenses in its attempt to determine which party was entitled to Ms. Withrow's life insurance

benefits under the Policy (the "Proceeds"); and

      WHEREAS, the parties have agreed to settle this action by agreeing to this form of

stipulated judgment (the "Stipulated Judgment"); and

      WHEREAS, the parties consent to this Court's entry of the Stipulated Judgment;

      IT IS HEREBY STIPULATED, ORDERED, ADJUDGED AND DECREED that:

1.  Judgment is hereby entered in favor of Defendant James P. Withrow and against Defendant Myung Pham LeGro.

2.  US Life is entitled to reimbursement of costs and attorneys' fees in the amount of $1,425.00, which is to be paid out of the Proceeds.

3.  US Life is directed to disburse the remaining Proceeds under the Policy, amounting to $34,975.00, to James P. Withrow, solely.

4.  US Life is hereby discharged from any and all claims relating to or concerning the Policy and/or the Proceeds.

5.  Defendant James P. Withrow and Defendant Myung Pham LeGro are permanently enjoined from instituting any proceeding or action against US Life relating to or concerning the Policy and/or the Proceeds.

6.  The entry of this Stipulated Judgment shall constitute a final judgment in this action, provided however that the Court shall retain jurisdiction over this matter for the purpose of enforcing this Stipulated Judgment among the parties.

| ASHBY & GEDDES | SEITZ VAN OGTROP & GREEN P.A. |
|---|---|
| _____ | _____ |
| Richard D. Heins (#3000) | Kevin A. Guerke (#4096) |
| Carolyn S. Hake (#3839) | 222 Delaware Avenue |
| 500 Delaware Avenue, 8th Fl. | Suite 1500, Box 68 |
| P.O. Box 1150 | P.O. Box 68 |
| Wilmington, DE 19899 | Wilmington, DE 19899 |
| (302) 654-1888 | (302) 888-0600 |
| *Attorneys for United States Life Insurance Company in the City of New York* | *Attorneys for James P. Withrow* |

Myung Pham LeGro

_____

2018 Maleady Drive
Herndon, Virginia 20170

*Myung Pham LeGro*

Dated:  September __, 2007

SO ORDERED this _____ day of _____, 2007.

_____
United States District Judge

184065.1

EXHIBIT E

Myung Pham LeGro
2018 Maleady Drive
Herndon, VA 20170
27 September 2007

RECEIVED

OCT 0 1 2007

AGG

Ashby and Geddes
500 Delaware Ave
PO Box 1150, Wilmington, DE 19899
Ms. Carolyn S. Hake

Case Number 07-511

Dear Ms. Hake:

I have told you that I intend to relinquish my right as beneficiary of my late sister's insurance policy, and I still plan to do so. However, before I sign the agreement you sent to me, I wish to be assured that you have had the form my sister signed naming me the beneficiary carefully examined. I have reason to suspect that it has been altered to mislead and to reflect that my sister signed it on the day before her death, when in fact I believe she signed it at least two days before she died. I have never seen the original "Group Insurance Beneficiary Designation," but I received, from a source unknown to me, a reproduced copy on which my sister's signature has been obliterated, and the date "5/23/07" has been entered and circled. This date does not appear to be in my sister's hand, and the date is wrong. I believe she signed it not later than the 22nd. You should be able to confirm this through the persons from Playtex who witnessed her signature.

I have enclosed my letter of 16 June to the insurance company, in which I accurately summarize the facts about the change of beneficiary that my sister executed at least two days before she passed away. Mr. Withrow's assertion that she was too heavily sedated to do this without my help and urging is terribly wrong, and he knows it. She was not heavily sedated until her final few hours of life. I have enclosed the altered form, which came in an envelope postmarked, "Wilmington." which also contained two letters from Mr.Withrow's lawyers.

I do not want to fight for this money, to endure the stress of a trial far from my home, or to see Mr. Withrow or Delaware ever again. But I do not believe he should profit from fraud or forgery. That is what I believe may be happening here. If you can assure me that the circled date, "5/23/07," was written on the original document by my sister, and that this has been confirmed by a qualified expert, I shall sign the agreement you sent to me.

Sincerely,

Myung Pham LeGro

cc: Clerk of the United States District Court, District of Delaware

EXHIBIT F

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

October 4, 2007

*VIA FEDERAL EXPRESS*

Myung Pham LeGro
2018 Maleady Drive
Herndon, Virginia 20170

> Re:    *The United States Life Ins. Co. in the City of New York v. James R. Withrow
> and Myung Pham LeGro; C.A. No. 07-511*

Dear Ms. LeGro:

We write in response to your letter dated September 27, 2007, which we received on October 1, 2007. In the letter, you request certain assurances from our client, The United States Life Insurance Company in the City of New York ("US Life"), before you agree to sign the Stipulated Judgment and Order.

US Life is *not* in the position to provide any assurances to *either* Mr. Withrow *or* you in this matter. Specifically, US Life is a mere stakeholder with no interest in the proceeds of Lisa Withrow's life insurance benefits (the "Proceeds") under the policy Ms. Withrow had with US Life (the "Policy"). Because Mr. Withrow and you both claimed the right to the Proceeds, US Life brought the interpleader action in the District Court for the District of Delaware to determine the proper claimant of the Proceeds.

Furthermore, the enclosed Stipulated Judgment and Order was drafted entirely because you (and your husband) indicated to me that you no longer wanted to challenge Mr. Withrow's claim to the Proceeds. Based upon those telephone conversations, it was my understanding that you wished to enter into this arrangement. If you no longer wish to sign the Stipulated Judgment and Order, which is entirely your prerogative, this litigation will be necessary to resolve the competing disputes over the Proceeds of the Policy. Please be further advised that US Life is seeking reimbursement of its costs and attorneys' fees incurred in connection with the action. *See Everitt v. Everitt*, Del. Supr., 146 A.2d 388, 393 (1958).

To allow you time to decide how you would like to proceed and/or for you to retain counsel, US Life also will agree to give you (and Mr. Withrow) a further extension of time until November 1, 2007 to respond to the Interpleader Complaint (and US Life's Motion for an Order authorizing payment of funds into Court, granting attorneys' fees and authorizing discharge from

Myung Pham LeGro
October 4, 2007
Page 2 of 2

further liability and dismissal from action (the "Motion")).  I have enclosed a Stipulation and Order formalizing that extension for your signature (the "Stipulation of Extension").   If you agree to the terms of this document, please return it to me in the self-addressed, stamped envelope for filing with the Court.

       In the event that you do not wish to sign the Stipulated Judgment and Order, your responses to US Life's Interpleader Complaint and Motion will be due to be filed with the Delaware District Court on November 1, 2007, assuming that the Stipulation of Extension is approved by the Court and no further extensions are granted.

       Finally, as I indicated on the phone to your husband and you, we represent The United States Life Insurance Company in the City of New York's interests only and our sole advice to you is to obtain an attorney if you so desire.

       We look forward to hearing from you soon.

                              Very truly yours,

                              Carolyn S. Hake

Enclosures

cc:  Kevin A. Guerke, Esquire (via hand delivery; w/encls.)
184633.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES LIFE INSURANCE )
COMPANY IN THE CITY OF NEW YORK, )
                         )
         Plaintiff,           )
                         )
           v.                )      C.A. No. 07-511 (***)
                         )
JAMES R. WITHROW and           )
MYUNG PHAM LEGRO,             )
                         )
         Defendants.        )
                         )

## STIPULATED JUDGMENT AND ORDER

WHEREAS, on August 21, 2007, Plaintiff, The United States Life Insurance Company in

the City of New York ("US Life"), filed this interpleader action pursuant to Fed. R. Civ. P. 22

and 28 U.S.C. § 1335 against Defendants James P. Withrow and Myung Pham LeGro in order to

obtain a Court determination as to the proper claimant to the life insurance benefits under the

combined basic and supplemental life insurance policy that US Life issued to Lisa P. Withrow in

the amount of $36,400.00 (the "Policy"); and

WHEREAS, US Life has been caused to expend approximately $1,425.00 in fees and

expenses in its attempt to determine which party was entitled to Ms. Withrow's life insurance

benefits under the Policy (the "Proceeds"); and

WHEREAS, the parties have agreed to settle this action by agreeing to this form of

stipulated judgment (the "Stipulated Judgment"); and

WHEREAS, the parties consent to this Court's entry of the Stipulated Judgment;

IT IS HEREBY STIPULATED, ORDERED, ADJUDGED AND DECREED that:

1.  Judgment is hereby entered in favor of Defendant James P. Withrow and against Defendant Myung Pham LeGro.

2.  US Life is entitled to reimbursement of costs and attorneys' fees in the amount of $1,425.00, which is to be paid out of the Proceeds.

3.  US Life is directed to disburse the remaining Proceeds under the Policy, amounting to $34,975.00, to James P. Withrow, solely.

4.  US Life is hereby discharged from any and all claims relating to or concerning the Policy and/or the Proceeds.

5.  Defendant James P. Withrow and Defendant Myung Pham LeGro are permanently enjoined from instituting any proceeding or action against US Life relating to or concerning the Policy and/or the Proceeds.

6.  The entry of this Stipulated Judgment shall constitute a final judgment in this action, provided however that the Court shall retain jurisdiction over this matter for the purpose of enforcing this Stipulated Judgment among the parties.

| ASHBY & GEDDES | SEITZ VAN OGTROP & GREEN P.A. |
|---|---|
| Richard D. Heins (#3000)<br>Carolyn S. Hake (#3839)<br>500 Delaware Avenue, 8th Fl.<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888 | Kevin A. Guerke (#4096)<br>222 Delaware Avenue<br>Suite 1500, Box 68<br>P.O. Box 68<br>Wilmington, DE 19899<br>(302) 888-0600 |
| *Attorneys for United States Life Insurance Company in the City of New York* | *Attorneys for James P. Withrow* |

Myung Pham LeGro

_____

2018 Maleady Drive
Herndon, Virginia 20170

*Myung Pham LeGro*

Dated:  October __, 2007

SO ORDERED this _____ day of _____, 2007.

_____
United States Magistrate

184065.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-511 (***) |
| JAMES R. WITHROW and MYUNG PHAM LEGRO, | ) ) ) | |
| Defendants. | ) ) | |

**STIPULATED ORDER**

IT IS HEREBY STIPULATED AND AGREED, subject to the approval and order of the Court, that the date by which defendants must answer, move, or otherwise respond to the interpleader complaint in this matter is extended through and including November 1, 2007; and

IT IS HEREBY FURTHER STIPULATED AND AGREED, subject to the approval and order of the Court, that the date by which defendants must file and serve their answering briefs in opposition to plaintiff The United States Life Insurance Company in the city of New York's Motion for an Order Authorizing Payment of Funds into Court, Granting Attorneys' Fees and Authorizing Discharge from Further Liability and Dismissal from Action is extended through and including November 1, 2007.

| ASHBY & GEDDES | SEITZ VAN OGTROP & GREEN P.A. |
|---|---|
| _____ | _____ |
| Richard D. Heins (#3000)<br>Carolyn S. Hake (#3839)<br>500 Delaware Avenue, 8th Fl.<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>*Attorneys for United States Life Insurance*<br>*Company in the City of New York* | Kevin A. Guerke (#4096)<br>222 Delaware Avenue<br>Suite 1500, Box 68<br>P.O. Box 68<br>Wilmington, DE 19899<br>(302) 888-0600<br>*Attorneys for James P. Withrow* |
| MYUNG PHAM LEGRO | |
| _____ | |
| 2018 Maleady Drive<br>Herndon, Virginia 20170<br>*Myung Pham LeGro* | |

Dated:  October __, 2007

SO ORDERED this _____ day of _____, 2007.

_____
United States Magistrate

184662.1

2

EXHIBIT G

RECEIVED

OCT 1 7 2007

L.&G

Myung Pham LeGro
2018 Maleady Drive, Herndon, VA 20170
15 October 2007

Carolyn S. Hake, Ashby & Geddes
500 Delaware Ave. PO Box 1150
Wilmington, DE 19899

Dear Ms. Hake:

I shall not participate in the teleconference. I have nullified my entitlement to the proceeds of the policy. You may disburse the proceeds as you see fit. I want nothing more to do with this case or with Mr. Withrow. It is not my way, or the Vietnamese way, to participate publicly in a family dispute. Mr. Withrow has threatened me, in writing, with a lawsuit after this case is resolved, and he has threatened the Playtex employees who witnessed my sister's signature on the change-of-beneficiary form. Perhaps he will relent after he receives the money.

In relinquishing my rights, I have made it clear that Mr. Withrow's claim is based upon lies. The basic canard is in paragraph 9 of your "BACKGROUND" paper, in which the date of the change of beneficiary is given as 23 May, the day before she died. To set the record straight, in my presence Lisa told her husband several days before, while we were driving to an appointment, that she was going to remove him as beneficiary. A few days later in the hospital a man from Platex brought my sister a change-of-beneficiary form, which she asked me to safeguard for her in my luggage. (I was caring for her in her hospital room, 24 hours every day, sleeping on a couch.) Then, two or three days before she died, two ladies from Platex came to visit her. She asked me to bring the form to her, which she and the two ladies signed. They left with the form. If they have not succumbed to Mr. Withrow's threats, they would testify to the truth of what I have told you, and they would tell you that my sister was completely lucid and competent to make this decision. I believe that the document my sister signed has been criminally altered to reflect the date of 23 May.

Why did my sister make me the beneficiary? To be blunt, she hated her husband, and she told me so and why. This was her way to punish him and her daughter for abusing her during her last days on earth. Mr. Withrow and her daughter knew she was dying. They said they could not care for her at home, so they put her in a nursing home to die. She was desperately unhappy there. She signed herself out and asked a friend to take her home so I could care for her. Mr. Withrow asked me to come so I left my husband and daughter in Virginia and went to my sister's home, caring for her every need, day and night, sleeping on the floor beside her bed until she began to need more medical attention and was readmitted to the hospital. I was there by her side constantly. I did not leave even to eat, losing 20 pounds, snacking on crackers and whatever else was in the vending machines in the hall.

Thank you, Ms. Hake, for your patience with me, and for listening to me. I know you are only doing your duty to your client in accordance with the law.

Sincerely,

Myung Pham LeGro

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES LIFE INSURANCE )
COMPANY IN THE CITY OF NEW YORK, )
                                  )
        Plaintiff, )
                                  )
        v. )        C.A. No. 07-511 (***)
                                  )
JAMES R. WITHROW and )
MYUNG PHAM LEGRO, )
                                  )
        Defendants. )
                                  )

## STIPULATED JUDGMENT AND ORDER

WHEREAS, on August 21, 2007, Plaintiff, The United States Life Insurance Company in the City of New York ("US Life"), filed this interpleader action pursuant to Fed. R. Civ. P. 22 and 28 U.S.C. § 1335 against Defendants James P. Withrow and Myung Pham LeGro in order to obtain a Court determination as to the proper claimant to the life insurance benefits under the combined basic and supplemental life insurance policy that US Life issued to Lisa P. Withrow in the amount of $36,400.00 (the "Policy"); and

WHEREAS, US Life has been caused to expend approximately $1,425.00 in fees and expenses in its attempt to determine which party was entitled to Ms. Withrow's life insurance benefits under the Policy (the "Proceeds"); and

WHEREAS, the parties have agreed to settle this action by agreeing to this form of stipulated judgment (the "Stipulated Judgment"); and

WHEREAS, the parties consent to this Court's entry of the Stipulated Judgment;

IT IS HEREBY STIPULATED, ORDERED, ADJUDGED AND DECREED that:

1.  Judgment is hereby entered in favor of Defendant James P. Withrow and against

    Defendant Myung Pham LeGro.

2.  US Life is entitled to reimbursement of costs and attorneys' fees in the amount of

    $1,425.00, which is to be paid out of the Proceeds.

3.  US Life is directed to disburse the remaining Proceeds under the Policy,

    amounting to $34,975.00, to James P. Withrow, solely.

4.  US Life is hereby discharged from any and all claims relating to or concerning the

    Policy and/or the Proceeds.

5.  Defendant James P. Withrow and Defendant Myung Pham LeGro are

    permanently enjoined from instituting any proceeding or action against US Life

    relating to or concerning the Policy and/or the Proceeds.

6.  The entry of this Stipulated Judgment shall constitute a final judgment in this

    action, provided however that the Court shall retain jurisdiction over this matter

    for the purpose of enforcing this Stipulated Judgment among the parties.

| ASHBY & GEDDES | SEITZ VAN OGTROP & GREEN P.A. |
|---|---|
| Richard D. Heins (#3000)<br>Carolyn S. Hake (#3839)<br>500 Delaware Avenue, 8th Fl.<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888 | Kevin A. Guerke (#4096)<br>222 Delaware Avenue<br>Suite 1500, Box 68<br>P.O. Box 68<br>Wilmington, DE 19899<br>(302) 888-0600 |
| *Attorneys for United States Life Insurance Company in the City of New York* | *Attorneys for James P. Withrow* |

Myung Pham LeGro

_____

2018 Maleady Drive
Herndon, Virginia 20170

*Myung Pham LeGro*


Dated:  October __, 2007


SO ORDERED this _____ day of _____, 2007.


_____
United States Magistrate

184065.1

# EXHIBIT H

1

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

    UNITED STATES LIFE INSURANCE
 4  COMPANY IN THE CITY OF NEW YORK,      :    CIVIL ACTION
                                          :
 5                  Plaintiff,            :
                                          :
 6              v.                        :
                                          :
 7  JAMES R. WITHROW and MYUNG PHAM       :
    LEGRO,                                :
 8                                        :    NO. 07-511 (***)
                Defendants.
 9                              - - -

10                         Wilmington, Delaware
                     Wednesday, October 31, 2007 at 2:04 p.m.
11                       TELEPHONE CONFERENCE

12                              - - -

13  BEFORE:   HONORABLE LEONARD P. STARK, U.S. MAGISTRATE JUDGE

14                              - - -

    APPEARANCES:
15

16
              ASHBY & GEDDES, P.A.
17            BY:  CAROLYN SHELLY HAKE, ESQ.

18                     Counsel for Plaintiff

19
              SEITZ, VAN OGTROP & GREEN, P.A.
20            BY:  KEVIN A. GUERKE, ESQ.

21                     Counsel for James R. Withrow

22

23

24
                              Brian P. Gaffigan
25                            Registered Merit Reporter
```

1                              - oOo -

2                     P R O C E E D I N G S

3                (REPORTER'S NOTE:  The following telephone

4        conference was held in chambers, beginning at 2:04 p.m.)

5                THE COURT:  Good afternoon, counsel.  Are you

6        there?

7                (The attorneys respond, "Yes, Your Honor.)

8                THE COURT:  This is Judge Stark.  I have with me

9        a court reporter and two members of my staff.  We're on the

10       record in the matter of U.S. Life versus Withrow, which is

11       our Civil Action No. 07-511, assigned to our Vacant

12       Judgeship.

13               I would ask you, please, counsel for the

14       benefit of the court reporter if, before you speak, you

15       could identify yourselves so we can keep track of who is

16       speaking, even though it sounds as if your voices may be

17       somewhat different, but that will help us out.

18               The first question is my understanding is that

19       Ms. LeGro who is named as a defendant is not actually on the

20       call; is that correct?

21               MS. HAKE:  That is correct, Your Honor.  I

22       notified her of the teleconference request by the court

23       and gave her instructions to dial in with AT&T.  However,

24       she then notified me she will not participate in the

25       teleconference at the same time that she has sent the

3

1     signed stipulation, a stipulated judgment and order.

2              THE COURT:  And this is Ms. Hake speaking?

3              MS. HAKE:  I apologize, Your Honor.  This is

4     Ms. Hake.

5              THE COURT:  For U.S. Life; right?

6              MS. HAKE:  Yes.

7              THE COURT:  So let me make sure I follow.  Did

8     you have something in writing prior to today that told you

9     that Ms. LeGro would not be participating in the call?

10              MS. HAKE:  I apologize, Your Honor.  I do have

11     a correspondence, that she enclosed a stipulated judgment

12     and order but I did not file it with the letter with the

13     stipulated judgment and order to Your Honor because I

14     wasn't sure if she intended for the letter to be filed

15     with the court as it contained some additional thoughts of

16     her's I think in terms of the matter.  And we just weren't

17     comfortable filing it with the court in case she did not

18     intend for it to be a public document.  And I apologize for

19     not bringing that to Your Honor's attention ahead of time.

20              THE COURT:  Okay.  I understand the decision

21     not to file the letter but I'm trying to clarify, did she

22     address in writing to you whether or not she was going to

23     participate in the teleconference?

24              MS. HAKE:  Yes, that is correct, Your Honor.

25     This is again Carolyn Hake.  She said her letter states the

4

1    first sentence, "I shall not participate at the

2    teleconference."

3                    THE COURT:  Okay.  I understand your concerns

4    about protecting her privacy but I would have appreciated if

5    you had let the court know that.

6                    MS. HAKE:  I apologize.

7                    THE COURT:  Because to the contrary, what I saw

8    in your letter of October 26th, and I may have misread it,

9    was you have circled dial-in instructions for both

10   defendants, that you were planning to participate but you

11   cannot be sure of the other parties intentions.

12                   MS. HAKE:  Yes.

13                   THE COURT:  It does sound you at least had

14   some reason to believe you knew her intentions, but I don't

15   mean to be overly critical on that.  I just think we're in a

16   tricky situation because all I have to indicate that she is

17   consenting to entry of a judgment is your representation,

18   which I take completely in good faith, and what appears to

19   be her signature, but I can't be certain, of course.

20                   So I mean as an initial matter, I certainly

21   don't feel like I have -- I think I need to hear from her

22   directly, one way or another, whether she actually is

23   consenting.  I'm not comfortable getting that consent

24   through one of the other parties.  So I am certainly open

25   to suggestions from either party as to how they suggest I

1    go about hearing from her as to whether she is actually

2    consenting.

3           MR. GUERKE:  Your Honor, this is Kevin Guerke on

4    behalf of James Withrow.

5           THE COURT:  Yes.

6           MR. GUERKE:  It's my understanding she signed

7    the judgment and order and did consent to it being entered

8    by the court.  Therefore, it's my side's position that the

9    matter is essentially closed or at least from the parties'

10   point of view.

11          THE COURT:  Well, the problem I have with that

12   is in the correspondence I received directly from Ms. LeGro,

13   and I take it obviously from Ms. Hake that there has been

14   subsequent correspondence, but, of course, the court hasn't

15   seen it, she was reluctant at best to give up her claim and,

16   in fact, seems to be willing to give up her claim only upon

17   some sort of assurance as to whether the documents the

18   insurance company has received were actually executed as

19   they appeared to have been executed.  And so that is all I

20   have in the record with respect to her feelings.

21          MS. HAKE:  Your Honor, Carolyn Hake on behalf of

22   the plaintiff.  I had sent her a letter, in response to the

23   letter she had filed with the court asking for reassurances,

24   telling her our client is not in a position to provide

25   assurances to either defendant in this matter and just

1    asking her to consult with an attorney, if she wishes, and

2    giving her an extension of time to do so or in the event

3    that she wished to sign the stipulated judgment and order,

4    which was her prerogative, and as has been drafted at her

5    request, to go ahead and do so.  I have that letter which

6    I did not file with the court since it was just

7    correspondence.  However, I could file that.

8            I'm wondering if Your Honor would be interested,

9    perhaps we could redact the portions of Ms. LeGro's letter

10   to me in response to my letter that we would not provide

11   assurances or I could contact Ms. LeGro and ask her to write

12   a letter to Your Honor that it was her intention to sign the

13   stipulated judgment and order.  I'm not sure if either of

14   those suggestions makes sense or would satisfy the court's

15   concerns.

16           THE COURT:  Well, let me come back to that

17   but let me ask you this first.  As you know, I'm a

18   Magistrate Judge as opposed to a District Court Judge, and

19   my understanding of the rules of interpleader are, because

20   if I grant the relief that is sought, I will be providing

21   case dispositive relief, my understanding is I don't have

22   jurisdiction to do that absent the parties' express consent

23   to the jurisdiction of a magistrate.  Has that topic come up

24   at all in your conversations with Ms. LeGro?

25           MS. HAKE:  Carolyn Hake on behalf of the

1   plaintiff.  That has not.

2              THE COURT:  Okay.  So it seems to me I have two

3   levels of consent that I need to get from Ms. LeGro if I'm

4   to enter the relief that has been requested, and I also

5   would need to get consent in writing from the two parties

6   on the phone to my jurisdiction.  Of course, as I'm sure

7   counsel know, you are not, none of you are obligated, your

8   clients are not obligated to consent to my jurisdiction and

9   you don't have to tell me your views on consent.  There is a

10  procedure for doing that so that I don't know which party

11  holds out if in fact one party holds out on consent.

12              So while I take your suggestion, Ms. Hake,

13  certainly to be a constructive proposal, I'm going to

14  need to reflect on it a little bit more because I do need

15  to raise with Ms. LeGro the question of consent to my

16  jurisdiction, unless the parties have a different view on

17  that.  I'd be happy to hear you on that.

18              MS. HAKE:  No, Your Honor.  This is Carolyn Hake

19  on behalf of the plaintiff.  I believe when the complaint

20  was sent to her, she also received the form for consent to

21  the Magistrate Judge's hearing the matter.  But I will

22  double-check with that.

23              THE COURT:  Right.  Okay.  Let me ask you a few

24  other questions while I have you on the line.  Ms. Hake, the

25  motion is filed pursuant to Federal Rule of Civil Procedure,

1    I believe it's 22, as well as the statute covering

2    interpleader.  My understanding was that in order to proceed

3    with a Rule 22-based interpleader, there needed to be at

4    least $75,000 at issue; is that correct?

5             MS. HAKE:  We were bringing the action, Your

6    Honor, under 28 U.S.C., Section 1335.

7             THE COURT:  Right.  And is there not a $75,000

8    jurisdictional requirement that applies to that?

9             MS. HAKE:  Your Honor, I don't believe so.

10            THE COURT:  Okay.  And so we're proceeding under

11   that statute as well as under Rule 22 or not?

12            MS. HAKE:  Your Honor, not under Rule 22, the

13   statute.

14            THE COURT:  I'm sorry.  I believe I confused

15   that.

16            What about venue?  Are there any implications

17   for venue now that you clarified you are proceeding only

18   under the statute for interpleader as opposed to the rule

19   for interpleader?

20            MS. HAKE:  Carolyn Hake on behalf of plaintiffs.

21   28 U.S.C., Section 1397 provides any interpleader action may

22   be brought in the judicial district in which one or more of

23   the plaintiffs resides.  Here, defendant Mr. Withrow resides

24   in Delaware which is the jurisdiction where we brought the

25   action.

1              THE COURT:  Are you there?  Sorry.  Counsel, are

2     you there?

3              MS. HAKE:  Yes.

4              MR. GUERKE:  Yes, Your Honor.

5              THE COURT:  I didn't know.  So under 1397,

6     that's the venue provision relating to 1335, statutory

7     interpleader proceeding?

8              MS. HAKE:  Yes, Your Honor.

9              THE COURT:  I guess what confused us is the

10    interpleader complaint.  Under jurisdiction and venue, you

11    cite to 1391, venue as proper pursuant to 1391.

12             MS. HAKE:  I apologize.

13             THE COURT:  I just want to make sure I've got

14    that clear.  Okay.  And even though unfortunately without

15    Ms. LeGro, this is premature, while I do have you, let me

16    bring up the question of attorney's fees.  I noticed that

17    attached to the complaint and in the declaration, plaintiffs

18    were asking for attorney fees roughly in the amount of

19    $2,800 but then in the stipulated judgment, the amount is

20    down to just over $1,400.  Ms. Hake, can you explain to me

21    that difference?

22             MS. HAKE:  Your Honor, we, in the interest of

23    settling the matter and not incurring additional fees going

24    forward, we had agreed to reduce our claim for fees in half

25    for purposes of settling.

1          MR. GUERKE:  Your Honor, this is Kevin Guerke.

2     That was at my and my client's request.

3          THE COURT:  Okay.

4          MR. GUERKE:  My client is the deceased husband,

5     and it seemed fair to at least request a reduction in fees

6     as he really didn't have anything to do with this matter.

7     But it was at our request, Your Honor.

8          THE COURT:  So, Mr. Guerke, your client has no

9     objection to an award of attorney's fees in the amount of

10    $1,425?

11         MR. GUERKE:  That's correct.  We agreed to that

12    amount and I believe that USA Life is entitled to that under

13    the statute.

14         THE COURT:  Okay.  And I take it, neither of

15    you think that Ms. LeGro has to weigh in on her view on

16    attorney's fees if she is in fact giving up her claim,

17    whatever it may be, to the amount in question; correct?

18         MR. GUERKE:  Correct, Your Honor.

19         MS. HAKE:  Carolyn Hake.  That's correct.

20         THE COURT:  All right.  Well, as I've

21    indicated, I do think I need more from Ms. LeGro to indicate

22    her consent both to my jurisdiction and her consent to the

23    proposed stipulated judgment and order.  Any efforts the

24    parties feel will be helpful to reach her, I think that may

25    well be productive, but it's my intent at the moment to have

1    the court reach out to her as well, which you will be copied

2    on, and see if we can get this moving and satisfy ourselves

3    as to what her position is on both questions of consent.

4              And I would also ask, neither party needs speak

5    to it now on the question of consent to my jurisdiction, but

6    if it is your intent to consent to my jurisdiction and if

7    you have not indicated that through the appropriate forms,

8    then I would ask you to turn your attention to that as soon

9    as possible.

10             MS. HAKE:  Yes, Your Honor.

11             THE COURT:  Is there anything further from

12   either counsel?

13             MR. GUERKE:  Not from the defendant James

14   Withrow, Your Honor.

15             THE COURT:  And Ms. Hake.

16             MS. HAKE:  The only thing I would ask is at

17   some point, and I don't think today is necessarily the

18   appropriate time since we are still trying to work out a

19   stipulated judgment and order, but perhaps if that is not

20   able to be done, we, our client, the plaintiff, the order

21   I guess attached to our motion for authorizing payment of

22   the funds into the court and granting attorney fees, which

23   I understand Your Honor may wish to reduce, and authorizing

24   discharge from further liability be entered.  And, again, I

25   don't think this necessarily is an appropriate time.  We're

1    still working on it.  Ms. LeGro intends fully to sign the

2    stipulated judgment and order but I just wanted to bring

3    that up.

4              THE COURT:  Okay.  And I recognize that that

5    motion and those related requests were pending, too, but

6    my understanding of my jurisdiction is I don't have the

7    authority to act on even that part of your request without

8    the consent of all parties to my jurisdiction, so that's why

9    I do need to go about resolving that first and then take it

10   from there.

11             MS. HAKE:  Understood.

12             MR. GUERKE:  Your Honor, this is Kevin Guerke

13   again.

14             THE COURT:  Yes.

15             MR. GUERKE:  If that raises an issue,

16   Mr. Withrow has not filed an answer or his cross claim

17   because we thought we had the matter resolved.  I guess can

18   we operate with an extension or an extended schedule for

19   filing an answer, if at all necessary?  I don't think it

20   will be, but I don't want to miss a deadline if ...

21             THE COURT:  Well, you will have to put together

22   a request of some sort and let me know.  I can't really

23   advise you on how to handle that.

24             MS. HAKE:  This is Carolyn Hake.  We had

25   previously given an extension just through November 1st

1   when we were still wrapping up the stipulated judgment and

2   order.   And I will be happy to work with Mr. Guerke on any

3   further extension which we can try to get on file with the

4   court.

5              THE COURT:   It sounds like the parties have, at

6   least the two on the phone have a cooperative relationship,

7   and it sounds like U.S. Life does with Ms. LeGro, so I'm

8   hopeful that we can sort through this little bit of a mess

9   and get the proper papers filed and get everything resolved.

10  But I just find for the reasons we talked about, I can't

11  do any of it today, but we will take steps on our end, and

12  hopefully you folks will as well on your end, to resolve

13  these issues so we can get the case moving.   Okay?

14             MS. HAKE:   Thank you, Your Honor.

15             THE COURT:   Is there anything further?

16             MR. GUERKE:   No, Your Honor.

17             MS. HAKE:   No, Your Honor.

18             THE COURT:   All right.   Thank you, counsel.

19             MR. GUERKE:   Thank you.

20             MS. HAKE:   Thank you.

21             THE COURT:   Good-bye.

22             (Telephone conference ends at 2:22 p.m.)

23

24

25

EXHIBIT I

Myung Pham Legro
2018 Maleady Drive
Herndon VA 20170                    25 November 2007

Myung

Earlier in November my attorney had told me that you had signed
a document noting that you were not going to pursue the insurance
claim.  Everything was to have been resolved by end November.

Then I get another call from my attorney;  you had changed your
mind and would continue the claim.  I don't know how that was
allowed after you returned the document saying you would not
continue the claim.

I had certainly hoped that you would do the right and sensible
thing.  Obviously that is not the case.  So, you leave me no
alternatives.

I've instructed my attorney to file a number of appropriate
lawsuits against you and have asked for a "jury trial" in Delaware.
He should be filing those next week.

I really thought that you were a better person, although your
family refers to you as the "evil one".  I really thought that you
would let it go so that we would not have to continue the mental
anguish.  But, apparently, you think you have a personal score to
settle with me.  So, I will meet your challenges  head on!

I have asked your family to come to Delaware and testify as to your
character.  They will be asked if, in their opinions, you were
capable  of pulling a con or scam to get Lisa's life insurance.

The main issue with respect to asignment of beneficiary on the
day preceding Lisa's death:  "Was she sufficiently mentally competent
to knowingly have executed  a document of such consequence?"
Medical evidence and witnesses will show that you took unfair
advantage of Lisa's vulnerability.

Then, your family will testify that you discussed the insurance
with your family in Vietnam "before" Lisa signed the change of
beneficiary form on 23 May 2007.  You discouraged Linda and Yen
from coming from Colorado because you told them Lisa's condition
was not that severe.  And, for that reason, they were not able to
see Lisa before she died.

Plus, Lieu will testify that you called her and promised her a share
of the insurance if it was awarded to you.  This call was made well
after Lisa's death!

Some of your family believe that the reasons you are continuing the insurance claim is because of the costs of Theodora's college expenses ($44,000.00 per year). They think this is your movation for doing what you are doing. Also, the fact that Bill is a retired army Colonel and having to work menial jobs to meet those expenses. You can rest assured that we will make appropriate argument as to "motivation" in taking advantage of Lisa's vulnerability.

I really didn't want to make this a family issue. Theodora certainly doesn't need to be made a part of this scam. But, the decision is yours to continue this drama.

I have already talked to Linda this past week. She has promised to fly her from Colorado to the trial to testify against you. In her opinion, you are quite capable of pulling ~~some~~ a con or scam to get Lisa's life insurance.

They will also testify that you and Lisa didn't get along very well and that you and she had not talked with each other for 3-4 years until last year. Lisa also discussed her reasons with Linda and your two nieces in Herndon.

I now know that it was a colossal mistake to let you come to stay with Lisa. You had no compassion for your sister. But, you saw an opportunity and took advantage of it.

After her passing, you didn't attend any funeral/burial services (Vietnamese or American). You know how that will set with a jury! And, I am sueing you for "mental anguish" because you took unfair advantage of Lisa's pain and suffering for your personal gain.

One of the biggest issues in these court proceedings will be that "you never informed mr that the beneficiary was changed. I only learned of the change when I opened an envelope from Playtex while reading Lisa's obituary in the Delaware State News on Saturday following her death.

But, the lady from Playtex who was there when the document was signed will testify that she specifically asked Lisa if she knew what she was signing and if she had discussed it with me. Lisa did not answer and only rolled her eyes. But, the lady said that you had responded that "yes, she discussed with him (her husband) last night!".

Lieu will also testify that, just before Lisa returned to the hospital, she had told her that you would not let her eat and controlled everything. You were also the reason that her therapist and visiting nurse quit because you wouldn't let her get up and walk/exercise, etc. You deciced what she could eat and do when she was home. She said Lisa was very upset with you on the Thursday before returing to the hospital because you told Linda and Yen that her condition was not that severe and they didn't need to come until later. On that Thursday when Greg and Lieu took Lisa to the doctor, she confided several things with them about you. And, among them were not your "compassionate caring" and your personal sacrifice to take care of her. She had told Lieu that "she does not do anything without a reason and to watch out for her".

I have been told by my attorney that the principal issue in these court proceedings is that I must prove that Lisa was not sufficiently competent to execute such an important document. He's convinced that I have more than adequate proof (via statement from Lisa's surgeon) and other hospital records). Then, there is the testimony of friends and coworkers that visited Lisa on both the 23rd of May and date of her death.

And, once we have proven that issue, the next court action will be quite simple. If she wasn't competent, it was obvious, then you were pulling a con to get Lisa's life insurance".

Lisa's hairdressed, Noy, said that she will testify that she heard me ask you specifically who you had notified on the night of Lisa's death. She heard me ask you specifically if you had called Uncle The. Your response was that you had called him. And, since you did not, it was obvious that, for some reasons, you did not want him to learn of her death until after all the ceremonies, etc. were over. Your reasons for that were obvious; you wanted The to think that I purposefully didn't want him to know until she was buried.

Don and Linda have known me much better that you. We were stationed in Germany together for a number of years. Also, Lieu, Lisa's best frined, Ray and Lea Hubbard, Noy (Lisa's hairdresser); they all know the relatiohship between Lisa and myself.

Plus, a jury trial will easily be convinced that you stole the Life insurance from Lisa's granchildren.

Two people will testify that they specifically heard Lisa ask me to send part of the insurance money to her family in Vietnam next year during TET. She always sent money to them at this time and had asked me to continue doing that. So, if she was intentionally giving you the money, why would she ask me to send part of it to her family.

The $34,000 is of no consequence to me. Lisa is gone now and I have no one to share life or money with. So pursuing this for the sake of the money is not the issue.

But, apparently, the $34,000 is most important to you that you would risk further alienation of your family to get it.

As I've stated earlier, I have no personal vendetta against you or Bill or any of your family. I would rather have gotten on with dealing with my grief than pursue this insurance saga.

But, you insist on continuing. So I will execute appropriate legal action. And, obviously, it will not be a pleasant experience. I don't think that you will find a single person anywhere that will agree that having Lisa sign a change in beneficialy form for her life insurance on the day preceding her death was right! So, the questions then become your "motivation for doing so", since you alone were the most knowledgeable of her terminal status.

You know that I just can't step away and let you have the life insurance.

You also know that I will make this a most unpleasant experience for you. I won't hold nothing back.

As to the letter from Dr. Clements, the only remaining issue is the character of "wife's sister" in relation to having been taken. Linda and other members of your family will provide the necessary characterization.

Again, I really didn't want to have to take the issues to this extreme. I would have preferred to just let everything go and deal with my grief. But, you won't let me do that.

What do you think the opinion of a jury is going to be when they review evidence/hear testimony that you had adequate motivation and took advantage of Lisa's vulnerability for her life insurance? How do you think the jury will feel with respect to your denying me the chance to deal with my wife's passing?

I think Yen is still talking to you. I'm sure that if you called her, she can relay the fact that Linda will certainly testify against you in court. Her characterization of you will not be a pleasant one. Because of you, she did not get to visit with her sister before she died.

I certainly hope that you know what you are exposing yourself to. That's why I'm giving you some heads up on certain issues. I won't hold anything back and you can count on that.

And, I'm not trying to intimidate you into withdrawing your claim now. You've now made this a personal issue and I will see it through to the bitter end. And, I don't leave any stones unturned.

I now know that you did not care for Lisa. Perhaps this was your way of getting even with her for your past disagreements. I don't really know why. The money is only one of the issues here! You came and stayed with Lisa because you had a specific purpose(s) in mind. And, you pursued them vigorously.

In the next several weeks/months I will devote my total attention to accumulating evidence and testimony that will clearly prove your motivation for the change of beneficiary form.

                    JAMES R. WITHROW

Dec 20 07 01:34p    William E. LeGro    703-707-0023    p.2

# IN THE UNITED STATED DISTRICT COURT FOR THE DISTRICT OF DELAWARE

THE UNITED STATES LIFE
INSURANCE COMPANY
IN THE CITY OF NEW YORK.

      Plaintiff,

      v.

JAMES R. WITHROW and
MYUNG PHAM LEGRO.

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 07-511-LPS

JURY TRIAL OF 12 DEMANDED

## AFFIDAVIT OF MYUNG PHAM LEGRO

STATE OF VIRGINIA    :
           : ss
Fairfax     COUNTY  :

Myung Pham Legro, being duly sworn, deposes and states under oath:

I am a Defendant in this action. I read the Response In Opposition To Motion To Enforce Stipulated Judgment And Order (the "Opposition"). Insofar as the allegations in the Opposition concern my own act or deed, those allegations are true. Insofar as the allegations in the Opposition relate to an act or deed of any other person, upon present information and belief, I understand that they are true.

_____
Myung Pham Legro

SWORN TO AND SUBSCRIBED before
me this _20_ day of December 2007.

_____
NOTARY PUBLIC

VEVONICA TAT
Notary Public
Commonwealth of Virginia
298905
My Commission Expires Jul 31, 2008

WMIA 252971v1 12/19/07

## CERTIFICATE OF SERVICE

The undersigned hereby certify that one (1) copies of the attached pleading was served this 20th day of December, 2007 on the following individuals by First Class Mail, postage prepaid:

Carolyn S. Hake, Esquire
ASHBY & GEDDES
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware  19899

Kevin A. Guerke, Esquire
SEITZ VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, Delaware  19899

/s/ Seth A. Niederman, Esquire
Seth A. Niederman, Esquire (No. 4588)

WM1A 155512v2 12/20/07