IN THE UNITED STATES DISTRICT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, § § § Plaintiff, § § v. § § JAMES R. WITHROW and § MYUNG PHAM LEGRO, § § Defendants. § | C.A. No. 07-511-LPS JURY TRIAL OF 12 DEMANDED |

**JAMES R. WITHROW'S REPLY BRIEF IN SUPPORT OF MOTION
TO ENFORCE STIPULATED JUDGMENT AND ORDER**

                               JAMES S. GREEN (DE 0481)
                               KEVIN A. GUERKE (DE 4096)
                               **SEITZ, VAN OGTROP & GREEN, P.A**.
                               222 Delaware Avenue, Suite 1500
                               P.O. Box 68
                               Wilmington, DE  19899
                               (302) 888-0600
                               Attorneys for Defendant
                                 James R. Withrow

DATED: December 28, 2007

**I.     TABLE OF CONTENTS**

|  |  | page |
|---|---|---|
| I. | TABLE OF CONTENTS | i |
| II. | TABLE OF CITATIONS | ii |
| III. | ARGUMENT | 1 |
|  | A.  LeGro's Misleading Statement of Facts. | 1 |
|  | B.  The Stipulation is a Valid and Enforceable Contract. | 5 |
|  | C.  Adequate Consideration Supported the Stipulation. | 7 |
|  | D.  LeGro's Duress Argument Fails. | 7 |
| IV. | CONCLUSION | 11 |

**II.** **TABLE OF CITATIONS**

CASES

Cianci v. JEM Enterprise, Inc.,
  2000 WL 1234647 (Del. Ch. 2000) ........................................................................................ 9

E.I. DuPont v. Custom Blending International, Inc.,
  1998 WL 842289 (Del. Ch. 1998) .......................................................................................... 9

Edge of the Woods v. Wilmington Savings Fund Society,
  2001 WL 946521 (Del. Super. 2001)...................................................................................... 8

Hensel v. U.S. Electronics Corporation,
  262 A.2d 648 (Del. 1970) ....................................................................................................... 7

### III. ARGUMENT

It is ironic that after taking advantage of and manipulating her sister as she lay helpless, dying in a hospital bed, LeGro is now claiming duress in an effort to get out of the Stipulation she signed. The gist of her argument is that Mr. Withrow's September 7, 2007 letter was such an overpowering threat to her it overcame her free will causing her to sign the Stipulation, which occurred more than five weeks after receiving the letter. Surprising further, for similar reasons, is LeGro's argument that the Stipulation is invalid because she was confused and not represented by counsel. LeGro's arguments are nonsense and should be rejected. LeGro's sensational allegations that Mr. Withrow wanted his wife to die and that Mrs. Withrow wanted a divorce, among others, should be stricken. They are meant only to vilify and smear Mr. Withrow and to misdirect the Court away from the issues before it.

#### A. **LeGro's Misleading Statement of Facts.**

LeGro's affidavit consisting of her seven page statement of facts in her brief is misleading, or at best, inaccurate.

LeGro informed US Life that she intended to give up her rights to the Policy proceeds in September 2007. (LeGro Answer Brief p. 6 hereinafter "AB p. _") She did so because she did not want to fight over the Policy, did not want to be sued, and did not want the money at issue. (AB p. 6) LeGro made this decision before she received any correspondence from Mr. Withrow. LeGro received a letter from Mr. Withrow dated September 7, 2007. (AB p. 6; Ex. "G") This letter did not arrive until after she decided to give up the Policy. (AB p. 6)

62311v1

1

In that September 7th letter, a clearly distraught Mr. Withrow stated what LeGro already knew – that he planned to sue her and to prove she took advantage of Mrs. Withrow's vulnerable condition. (AB Ex. "C") He stated he was challenging the change of beneficiary form and Mrs. Withrow's competency to execute it. He stated he will call Mrs. Withrow's family, co-workers, and physicians to testify in support of his position. "Never in my wildest imagination would I have thought that you would have Lisa change her life insurance to you under the circumstances." (AB Ex. "C") He further stated he would have followed his wife's wishes regarding the Policy, if they were ever expressed to him. "But, to have it done secretly without my knowledge was a violation of a sacred trust!" (AB Ex. "C") Mr. Withrow also stated he looked forward to confronting LeGro in a court of law concerning her actions.

LeGro claims she was "shocked" by the September 7th letter. (AB p. 6) It is unclear what shocked her. She knew since at least June 2007 that Mr. Withrow was challenging her claim and Mrs. Withrow's competency and was prepared to sue her over the issue. (AB p. 5) She knew Mr. Withrow hired an attorney to do so. She also knew, prior to receiving the letter, that Mr. Withrow was upset and had spoken to LeGro's family and Mrs. Withrow's co-workers regarding the matter. (AB Ex. "B") At the time, she had already written to US Life in response to Mr. Withrow challenge to her claim. She had already been served with US Life's Interpleader Complaint. (D.I. 7) Therefore, Mr. Withrow's September 7th letter could not have been very shocking.

At least two weeks later LeGro received US Life's letter enclosing a draft of the Stipulation, which was only drafted because LeGro informed US Life that she wanted to end the case. (Opening Brief Ex. "C" hereinafter "OB Ex. _") LeGro did request

62591 v1

2

assurance from US Life that the change of beneficiary form had been examined (OB Ex. "D"), but again stated that she intended to relinquish her rights to the Policy and reiterated her reasons why. "I do not want to fight for this money, to endure the stress of a trial far from my home, or to see Mr. Withrow or Delaware ever again." (OB Ex. "D") Tellingly, LeGro failed to mention Mr. Withrow's September 7th letter in her September 27th correspondence with US Life. Her purported shock must have worn off by then. The obvious explanation for the omission is it had no influence on her decision to sign the Stipulation.

Five weeks after receiving Mr. Withrow's September 7th letter, LeGro for the first time, informs US Life of the letter, stating only "Mr. Withrow has threatened me in writing, with a lawsuit after this case is resolved." (AB p. 8; Ex. "G")[1] In her October 15th letter, LeGro fails to express that Mr. Withrow's letter had <u>any</u> bearing on her decision to sign the Stipulation. She does, however, express clear assent to enter into the Stipulation. "I shall not participate in the teleconference. I have nullified my entitlement to the proceeds of the policy. You may disburse the proceeds as you see fit. I want nothing more to do with this case or with Mr. Withrow." (AB Ex. "G") She executed the Stipulation and returned it to US Life for filing with her October 15th letter. (AB p. 8)

In her brief, LeGro conveniently claims she "felt threatened into giving up her rights." (AB p. 8) However, LeGro did not state that at the time she signed the Stipulation. She fails to connect Mr. Withrow's September 7th letter as the cause for

---

[1] Mr. Withrow did not receive a copy of LeGro's October 15th letter until he was served with the Answering Brief.

signing the Stipulation and never states the letter affected her decision. LeGro then skipped the Court's teleconference because she considered the matter over.[2]

After LeGro signed the Stipulation she received a letter from Mr. Withrow dated November 25, 2007. (AB Ex. "I") This letter had nothing to do with LeGro's decision to breach the terms of the Stipulation. LeGro's claim that she changed her mind after reading the November 25th letter is false. LeGro inaccurately states in her brief that "[u]pon reading Withrow's letter and consulting with her husband, Myung decided that she must challenge Withrow in order to clear her name." (AB p. 9) It could not and did not happen that way.

Mr. Withrow's November 25th letter was sent after, and in response to, LeGro's breach of the Stipulation. In fact, at the beginning of Mr. Withrow's letter he stated that he learned LeGro had signed the Stipulation and that he thought everything was resolved. "Then I get another call from my attorney; you had changed your mind and would continue the claim." (AB Ex. "I") Clearly, Mr. Withrow's November 25th letter was written in response to LeGro's breach of the Stipulation.

Moreover, LeGro informed US Life that she intended to continue her claim to the Policy despite the Stipulation in the second week of November before she signed the Magistrate Judge Consent Form on November 14, 2007. This is further evidence that Mr. Withrow's letter had nothing to do with LeGro's decision. LeGro's continued claim to the Policy necessitated the consent form. She signed the consent form because she changed her mind about the Stipulation.

---

[2] At the teleconference, neither the Court nor Mr. Withrow had a complete record or understanding of the circumstances surrounding LeGro's execution of the Stipulation. LeGro was communicating with US Life, not to Mr. Withrow.

62591 v1

4

LeGro's brief, which she notarized as true, makes it appear that she retained counsel and consented to jurisdiction on November 29, 2007. (AB p. 9)  The obvious reason for this is to make it appear that Mr. Withrow's November 25th letter was an additional "threat" that contributed to her decision not to honor the Stipulation.  LeGro retained counsel <u>before</u> the consent was filed with the Court and <u>before</u> Mr. Withrow's November 25th letter.  Additionally, November 25th is a Sunday so she would not have received it that day or the 26th.

US Life informed Mr. Withrow that LeGro's counsel had made contact with US Life on behalf of LeGro on or before November 20, 2007.  A true and correct copy of US Life's November 20, 2007 email is attached hereto as Exhibit "1".  In that email LeGro's counsel is identified well in advance of Mr. Withrow's November 25th letter.  Mr. Withrow's November 25, 2007 letter should not be considered on the issue of enforcement of the Stipulation because it was written after LeGro's decision was made and is irrelevant to her decision to breach the Stipulation.  Furthermore, it had no influence on her decision to enter into the Stipulation.

LeGro's lack of candor with the Court regarding the facts of this case should be weighed against her when considering Mr. Withrow's Motion.

      **B.**    **<u>The Stipulation is a Valid and Enforceable Contract</u>.**

LeGro attempts to change history when arguing the Stipulation was an incomplete agreement among the parties. (AB p. 10, 11)  She also ignores pertinent documents in her argument.  On October 4, 2007, US Life informed LeGro that it could not and would not give her any assurances related to the change of beneficiary form, which LeGro initially sought. (OB Ex. "E")  US Life also advised LeGro to retain counsel.  LeGro's letter of

October 15th evidences her desire to enter into the Stipulation at the time she executed it. She knew no assurances were forthcoming. She signed the Stipulation with that knowledge. The Stipulation was complete. No terms were open or required further negotiations. It should also be noted that LeGro fails to address her October 15th letter in her invalidity argument. LeGro's argument implies that her September 27th was the only communication surrounding the Stipulation. That is simply not true.

Even if she desired assurances, the assurances she sought related to the change of beneficiary form not to the Stipulation. LeGro never questioned or expressed confusion over the terms of the Stipulation. The terms remain unchallenged today. LeGro does not assert in her brief that any terms are ambiguous or require clarification. A reasonable person would conclude LeGro intended to be bound by the Stipulation considering her objective manifestations of assent expressed both in her correspondence to US Life and in her actions.

LeGro's decision not to retain counsel in regard to the Stipulation is irrelevant. She had every opportunity to retain counsel and discuss the matter with whomever she chose. Notwithstanding, the Stipulation is a simple document. The terms are clear. It is not a complex commercial contract requiring interpretation by an attorney. She also had every opportunity to not sign the Stipulation or consider the matter further. She was under no deadline to sign it. US Life was indifferent, which is reflected in its correspondence, because it would get out of the case whether LeGro signed the Stipulation or not. She decided to sign it and relinquish her rights to the Policy.

Despite LeGro's representation to the contrary, there is no issue of fact related to LeGro's execution of the Stipulation. There are obvious differences related to the change

of beneficiary form, but that is not relevant to the issue before the Court.  Therefore, an evidentiary hearing is unnecessary and Mr. Withrow's Motion should be granted.

      **C.**    <u>**Adequate Consideration Supported the Stipulation**</u>**.**

LeGro's statements illustrate the binding, legally recognizable consideration of the Stipulation.  She signed the Stipulation because she did not want to be sued; she did not want to fight over Mrs. Withrow's life insurance policy; she did not want to air a family dispute in public; and, she did not want to see Mr. Withrow or Delaware ever again. (OB Ex. "D"; AB Ex. "G")  She was a defendant in a pending lawsuit, but she clearly wanted to avoided litigation. "[A]s a general rule, a forbearance to sue is valid consideration whether the suit would have been successful or not." <u>Hensel v. U.S. Electronics Corporation</u>, 262 A.2d 648, 650 (Del. 1970).  LeGro bought peace when she signed the Stipulation.  That alone is sufficient consideration.

By signing the Stipulation LeGro avoided embarrassment and ridicule for her actions.  In part, her desire to end the case could have been driven by guilt.  She also did not want to hire and pay an attorney.  Quite possibly, LeGro realized she was caught in the act and wanted to avoid her actions coming to light.  Therefore, there was ample consideration for the Stipulation.

      **D.**    <u>**LeGro's Duress Argument Fails**</u>**.**

LeGro fails to establish <u>any</u> elements of duress.  The elements of duress are 1) a wrongful act 2) that overcomes the free will of a person 3) who has no adequate legal remedy to protect her interests. <u>Edge of the Woods v. Wilmington Savings Fund Society</u>, 2001 WL 946521, *4 (Del. Super. 2001) (discussing economic duress).

62591 v1

1.  Improper Threat

LeGro points only to Mr. Withrow's September 7, 2007 letter in her attempt to establish an improper threat. Mr. Withrow's letter was not improper. In fact, all of the purported "threats" actually occurred. Mr. Withrow was clearly upset over LeGro's actions, but he said nothing improper. He merely stated his intention to exercise all his available legal rights to see that LeGro did not succeed in her scam to defraud his wife.

"Generally, the threat to exercise a legal or contractual right that the maker of the threat clearly holds is not, in and of itself, improper. Threats of litigation are likewise typically permissible so long as the threat was done with a good faith belief that a viable cause of action existed." Id. (citations omitted) A viable cause of action not only existed, but was pending. If the threat of litigation is sufficient duress to void a contract, no one would be able to settle a lawsuit or conduct business.

"The word 'threat' does not equal duress'". Id. LeGro's duress argument begins and ends with a perceived "threat" from Mr. Withrow. She fails to discuss the other necessary elements and for that reason alone her argument fails. For completeness, the other elements of duress are addressed below.

2.  Free Will

LeGro fails to explain how Mr. Withrow's threat of litigation overcame her free will. She merely states in conclusory fashion "[a]ll of these factors overcame her free will and left her no reasonable alternative but to sign the Stipulated Judgment and Order." That is simply not enough to establish a prima facia defense of duress.

 "The test for determining whether the duress produced the assent is a subjective one that focuses on the state of mind of the 'victim' of the duress." Cianci v. JEM

Enterprise, Inc., 2000 WL 1234647, *9 (Del. Ch. 2000)(citation omitted.)  In Cianci, a father in-law threatened physical harm in a face to face meeting with the defendant.  The Court found no duress because the wrongful threat did not break the defendant's free will relating to the contract at issue.  Id. at *11.  When the recipient of the threat could have walked away and considered the terms deliberately no breaking of the will should be found.  Id. at *10; see also E.I. DuPont v. Custom Blending International, Inc., 1998 WL 842289 (Del. Ch. 1998) (holding a duress claim failed where plaintiff threatened to bankrupt defendant and pursue aggressive litigation against it).

   3.  Adequate Legal Remedy

"A threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it.'"  Cianci, 2000 WL 123467 at *11.  "In that regard, 'the availability of disinterested advice and the length of time that elapses between the making of the threat and the assent' also play into the causation analysis."  Id. at *10. (citation omitted)

LeGro claims she was confused and had no option but to sign the Stipulation.  She fails to identify what confused her.  The Stipulation could not be clearer, even for someone who has been in this country for only thirty-two years.  If she was confused, she could have sought clarification.  Her alternative was to continue her claim to the Policy.

LeGro consulted with her husband.  He is an educated retired Colonel.  He assisted her in drafting correspondence to US Life.  LeGro could have also retained counsel before she signed the Stipulation.  She obviously was capable of doing so.  LeGro had five weeks to consult with anyone she chose.  She had the option of not

signing the Stipulation.  However, she executed the Stipulation and admitted she executed it.  LeGro should therefore be bound by its terms.

## IV. CONCLUSION

For all the reasons stated above, James R. Withrow respectfully requests that the Court grant his motion and enter and enforce the Stipulated Judgment and Order.

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Kevin A. Guerke
JAMES S. GREEN (DE 0481)
KEVIN A. GUERKE (DE 4096)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for Defendant
  James R. Withrow

DATED: December 28, 2007

62591 v1

11

# EXHIBIT 1

# Kevin Guerke

**From:** CHake [CHake@ashby-geddes.com]
**Sent:** Tuesday, November 20, 2007 5:43 PM
**To:** Kevin Guerke
**Subject:** US Life; stipulation

Kevin,

Following up on our call this afternoon, attached for your review is a draft stipulation to extend time to respond to the complaint and motion until December 3rd. Although I am still waiting to hear whether Mr. Smith will indeed be representing Ms. LeGro in this matter, I forwarded a copy of the stipulation to him as well. Please let me know if I have your authorization to add your electronic signature to the stipulation for filing with the Court.

Also, as I mentioned I will only be in the office tomorrow morning so please let me know as soon as possible your client's position on the magistrate consent form since the deadline for filing that form is tomorrow. Although Ms. LeGro signed the form previously, I forwarded a copy of the form to Mr. Smith to sign on Ms. LeGro's behalf if he is appearing in this action as her counsel. Assuming we get that form executed by him tomorrow, we can file it with the Court in the morning if your client is agreeable.

Thanks.

   ~Carolyn

12/26/2007

**CERTIFICATE OF SERVICE**

  I, Kevin A. Guerke, Esquire, hereby certify that on this 28th day of December 2007, I filed the foregoing ***James R. Withrow's Reply Brief in Support of Motion to Enforce Stipulated Judgment and Order*** with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record:

| | |
|---|---|
| Seth A. Neiderman, Esq. | Carolyn Hake, Esq. |
| Citizens Bank Center | ASHBY & GEDDES |
| 919 N. Market Street, Suite 1300 | 500 Delaware Avenue |
| P.O. 2323 | P.O. Box 1150 |
| Wilmington, DE 19899-2323 | Wilmington, DE 19899 |

              /s/ Kevin A. Guerke
              Kevin A. Guerke (ID No. 4096)

62640v1