## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES LIFE  :
INSURANCE COMPANY  :
IN THE CITY OF NEW YORK,  :
    Plaintiff,  :
    :
v.  :  Civ. No. 07-511-LPS
    :
JAMES R. WITHROW and  :
MYUNG PHAM LEGRO,  :
    :
    Defendants.  :

Carolyn S. Hake, ASHBY & GEDDES, Wilmington, Delaware, Attorney for Plaintiff.

James S. Green and Kevin A. Guerke, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware, Attorneys for Defendant Withrow.

J. Breck Smith, Seth A. Niederman, and Sophia Siddiqui, FOX ROTHSCHILD LLP, Wilmington, Delaware, Attorneys for Defendant LeGro.

**MEMORANDUM OPINION**

January 31, 2008
Wilmington, Delaware

*[signature]*
**STARK, U.S. Magistrate Judge**

In this interpleader action, defendant James Withrow ("Withrow") moves to enforce a stipulated judgment entered into among himself, defendant Myung Pham LeGro ("LeGro"), and plaintiff United States Life Insurance Company in the City of New York ("U.S. Life"). Pursuant to the stipulated judgment, Withrow and LeGro agreed that Withrow would receive the proceeds of a life insurance policy belonging to the late Lisa Withrow, who was Withrow's wife and LeGro's sister. LeGro's opposition to entry of the stipulated judgment requires the Court to examine its validity as a binding contract under Delaware law. Because the Court finds that the stipulated judgment contains no consideration to LeGro, it is not a contract, and the Court declines to enforce it. Accordingly, Withrow's motion to enforce the stipulated judgment will be denied.

## BACKGROUND

The following facts are uncontested. As an employee of Playtex Corporation, Lisa Withrow took out a life insurance policy administered by U.S. Life. (D.I. 19) Initially, Lisa Withrow designated her husband, Withrow, as primary beneficiary of the policy proceeds. At some point prior to her death in May 2007, Lisa Withrow executed a change of beneficiary form, designating her sister, LeGro, as sole beneficiary and removing Withrow.[1]

On August 21, 2007, plaintiff U.S. Life filed an Interpleader Complaint seeking the Court's assistance in determining the legal beneficiary of the proceeds of Lisa Withrow's life

---

[1] The timing of and circumstances surrounding execution of the change of beneficiary form are vigorously contested. However, resolution of the pending motion requires only examination of events relating to execution of the stipulated judgment, not events relating to the change of beneficiary form.

1

insurance policy. (D.I. 1) U.S. Life requested that the Court permit it to deposit the insurance proceeds with the Court, deduct from those proceeds a sum for its attorney fees, and enjoin Withrow and LeGro from suing U.S. Life. (D.I. 3)

On September 7, 2007, Withrow sent a letter to LeGro describing in detail what she could expect in litigation if she adhered to her claim to the life insurance proceeds. (D.I. 26 Ex. C) Withrow further explained that after resolution of the interpleader action to determine the rightful recipient of the insurance proceeds, he would file another lawsuit against LeGro for "Manipulation of a Mentally Infirm Person with the intent of financial gain." *Id.*

In or around September 2007, an attorney representing U.S. Life had conversations with LeGro and her husband about LeGro's intentions with respect to the proceeds and came to understand that LeGro had decided to permit Withrow to obtain the proceeds. (D.I. 26 Ex. D) Thereafter, U.S. Life prepared a draft stipulated judgment to end the interpleader action and enter judgment regarding the proceeds in favor of Withrow. U.S. Life sent the stipulated judgment to LeGro on September 21, 2007. (D.I. 22 Ex. C)

On September 27, 2007 LeGro wrote to U.S. Life to state that she would sign the stipulated judgment if she could obtain from U.S. Life assurances that U.S. Life had confirmed through a handwriting expert that the date on the change of beneficiary form had been written by her sister. (D.I. 26 Ex. E)[2] Counsel for U.S. Life responded to LeGro on October 4, 2007, explaining that U.S. Life could give no assurances to either LeGro or Withrow. (D.I. 22 Ex. E)

In the meantime, the Court had scheduled a teleconference to discuss the status of the

---

[2]LeGro alleges that Withrow altered the form to make it appear as if Lisa Withrow signed it on the day before her death, a time when Withrow claims his wife was not competent to make such a decision.

case. (D.I. 10) On October 17, 2007, LeGro wrote again to U.S. Life to state that she would not participate in the upcoming teleconference and had "nullified" and "relinquished" her entitlement to the life insurance proceeds; she also provided U.S. Life with a copy of the stipulated judgment signed by her. (D.I. 26 Ex. G) On October 26, 2007, U.S. Life filed the stipulated judgment executed by U.S. Life, Withrow, and LeGro. (D.I. 11)

On October 31, 2007, the Court held a teleconference. (D.I. 12) LeGro did not participate. At the time, the Court had not been provided a copy of LeGro's October 17, 2007 letter explicitly nullifying and relinquishing whatever right she had to the proceeds of the policy. Instead, the Court had seen only LeGro's September 27 letter, in which she had indicated that her willingness to sign the stipulated judgment was contingent on receiving certain assurances from U.S. Life – assurances that were never provided. (D.I. 24 at 5-6)[3] Additionally, entry of the stipulated judgment would have terminated this case, yet as a magistrate judge the undersigned did not have authority to enter a final judgment without the unanimous consent of the parties to magistrate jurisdiction. *See* 28 U.S.C. § 636. As of October 31, no party had yet consented. (All parties subsequently did consent. (D.I. 16))

On November 25, 2007, Withrow again wrote to LeGro, after having apparently learned that LeGro had now decided to try to pursue her claim to the life insurance proceeds. (D.I. 26 Ex. I) This letter reiterates Withrow's earlier assertions about the likely testimony of family

---

[3] In attempting to discern the absent LeGro's intentions, the Court was also concerned by the fact that while U.S. Life's counsel had advised the Court in writing that she was not sure whether LeGro would be participating in the teleconference, on the phone U.S. Life's counsel disclosed that, at the time she had written to the Court, she was in possession of a letter from LeGro advising counsel that LeGro would not be participating in the call. *Compare* D.I. 11 (Oct. 26, 2007 letter to Court) *with* Oct. 31, 2007 Hrg. tr. (D.I. 24) at 3.

3

members and other potential witnesses and declares Withrow's intention to "make this a most unpleasant experience for you. I won't hold nothing back."

On November 28, 2007, the Court granted U.S. Life's Motion to Deposit Funds and Require Defendants to Interplead, dismissing U.S. Life from the case. (D.I. 17) On December 7, 2007, Withrow and LeGro filed Answers. (D.I. 19, 20) Withrow also filed crossclaims against LeGro for tortious interference with contract, intentional infliction of emotional distress, breach of contract, unjust enrichment, and a declaratory judgment that he is sole primary beneficiary and entitled to compensatory and punitive damages. (D.I. 20) Subsequently, LeGro filed crossclaims against Withrow for unjust enrichment and a declaratory judgment that she is the sole beneficiary and entitled to compensatory damages. (D.I. 27)

Withrow filed his motion to enforce the stipulated judgment on December 10, 2007. (D.I. 21) Following full briefing, the Court held oral argument on the motion on January 28, 2007.

## LEGAL STANDARD

"[A]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Read v. Baker*, 438 F. Supp. 732, 735 (D. Del. 1977) (internal citation omitted). A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *See Leonard v. University of Delaware*, 204 F. Supp. 2d 784, 786 (D. Del. 2002). A motion to enforce a settlement agreement closely resembles a motion for summary judgment and employs a similar review standard. *See Tierman v. Deroe*, 923 F.2d 1024, 1031 (3d Cir. 1991). "The court must treat all the non-movant's assertions as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *In re Elonex Phase II Power*

*Management Litigation*, 2003 WL 21460391, at *1 (D. Del. June 23, 2003) (internal quotation marks omitted).

## DISCUSSION

### The Objective Evidence Establishes That LeGro Intended to Be Bound by the Stipulated Judgment

LeGro first challenges enforcement of the stipulated judgment by referring to the "well established principle of contract law that if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to . . . the preliminary negotiations and agreements do not constitute a contract." *Intellisource Grp., Inc. v. Williams*, 1999 WL 615114, at *5 (D. Del. Aug. 11, 1999). She further argues that "'a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances,'" that she did not intend to be bound by the stipulated judgment. (D.I. 26 at 10-12 (quoting *Leonard*, 204 F. Supp. at 787)) LeGro adds that by refusing to accept the stipulated judgment during the October 31 teleconference, "the Court recognized the impropriety in giving effect to an alleged settlement agreement where one of the parties had expressed reservations with entering into the agreement." (D.I. 26 at 12)

The Court has concluded, however, that the record is more than sufficient to hold LeGro to the stipulated judgment she signed (to the extent the stipulated judgment is a valid and binding contract). LeGro advised U.S. Life in September that she wished to relinquish her rights to the life insurance proceeds. *See, e.g.*, D.I. 26 at 6 (acknowledging that in September 2007 LeGro "informed counsel for US Life by phone that she would give up her right to the proceeds of the Policy"). Although later that month she made her execution of the stipulation contingent on

5

receipt of certain assurances from U.S. Life, she later withdrew that contingency. On October 17, LeGro wrote to U.S. Life to state unambiguously – and unconditionally – that she was relinquishing her rights. In this cover letter accompanying her signature on the stipulated judgment, LeGro wrote: "I have nullified my entitlement to the proceeds of the policy. You may disburse the proceeds as you see fit. I want nothing more to do with this case or with Mr. Withrow." (D.I. 26 Ex. G) There was, at that point, no reason for U.S. Life or Withrow to think that LeGro regarded the stipulated judgment as incomplete. The stipulation she signed was by no means a "preliminary negotiation." Given all the circumstances, including particularly the October 17 letter and LeGro's signature on the stipulation, a reasonable person would conclude that LeGro manifested her assent to entry of judgment for Withrow.

The reasons the Court did not accept the stipulated judgment during the October 31, 2007 teleconference are set forth in the Background above, and include the fact that as of that date no party had consented to magistrate jurisdiction, meaning the undersigned magistrate judge had no authority to enter a final judgment. Also, and importantly, the Court had not seen LeGro's October 17 letter to U.S. Life.

**The Stipulated Judgment Will Not be Enforced**
**Because It Contains No Consideration to LeGro**

Both parties agree that in order for the Court to enforce the stipulated judgment over LeGro's objection, the Court must find that the stipulated judgment is a valid contract under Delaware law. (D.I. 40 at 2-3) LeGro argues that the stipulated judgment is not a binding contract under Delaware law since it provides for no consideration to her. According to LeGro, under the stipulated judgment she gives up any and all rights to the proceeds of Lisa Withrow's

policy and, in return, she gets nothing. (D.I. 26 at 12)

Withrow responds that the consideration LeGro received was avoiding having to deal with litigation over her sister's insurance policy and all the attendant cost and heartache. Pointing to LeGro's correspondence with U.S. Life, Withrow argues that LeGro "did not want to be sued . . . did not want to fight over Mrs. Withrow's life insurance policy . . . did not want to air a family dispute in public . . . did not want to see Mr. Withrow or Delaware ever again." (D.I. 28 at 7) Therefore, he continues, LeGro "avoided embarrassment and ridicule for her actions" and "bought peace" by signing the stipulation. *Id.*; *see also* Jan. 28, 2008 Hrg. tr. (D.I. 40) at 4-5.

On this point, the Court agrees with LeGro. Pursuant to Delaware law, "a valid contract requires good or valuable consideration," which is defined as "that which is given to induce a promise or performance in return." *Haft v. Dart Group, Corp.*, 841 F. Supp. 549, 573 (D. Del. 1993). As is evident from reviewing the terms of the stipulated judgment, nothing was given to LeGro to induce her promise to relinquish whatever rights she had in the policy proceeds.

After prefatory "Whereas" clauses, the entire contents of the stipulated judgment consist of the following:

1. Judgment is hereby entered <u>in favor of Defendant James P. Withrow</u> and against Defendant Myung Pham LeGro.

2. <u>US Life is entitled to reimbursement</u> of costs and attorneys' fees in the amount of $1,425.00, which is to be paid out of the Proceeds.

3. US Life is directed to disburse the remaining proceeds under the Policy, amounting to $34,975.00, <u>to James P. Withrow, solely</u>.

4. <u>US Life is hereby discharged</u> from any and all claims relating to or concerning the Policy and/or the Proceeds.

7

    5.     Defendant James P. Withrow and Defendant Myung Pham LeGro are <u>permanently enjoined from instituting any proceeding or action against US Life</u> relating to or concerning the Policy and/or the Proceeds.

    6.     The entry of this Stipulated Judgment shall constitute a final judgment in this action, provided however that the Court shall retain jurisdiction over this matter for the purpose of enforcing this Stipulated Judgment among the parties.

(D.I. 22 Ex. F) (emphasis added)

As can be seen, the stipulated judgment would give Withrow entry of judgment in his favor (¶ 1) and the proceeds of the policy (minus attorneys' fees) (¶ 3). The stipulated judgment would give U.S. Life reimbursement for its attorneys' fees (¶ 2), discharge from all claims relating to the policy (¶ 4), and freedom from being sued by Withrow or LeGro for any action relating to the policy (¶ 5). But the stipulated judgment would give LeGro nothing.

In particular, by signing the stipulated judgment LeGro did not "buy peace" and eliminate litigation. The stipulation does not provide releases to either LeGro or Withrow. Had the Court entered the stipulated judgment, Withrow would have been free the next day to file suit asserting causes of action that were the same as or similar to those now pending in this case as his cross-claims (e.g., unjust enrichment, intentional infliction of emotional distress). Everything that Withrow had legal authority to do (vis-a-vis LeGro) prior to execution of the stipulated judgment would have remained available to him even after judicial enforcement of it.

Counsel for Withrow acknowledged as much during oral argument, saying: "[i]f I read this stipulated judgment for what it is, it may not prevent him from filing additional lawsuits. . . . [T]here is not a clause in that agreement that forever precludes Mr. Withrow from filing a different lawsuit. I can't get around that." (D.I. 40 at 6, 8) Thus, assuming, arguendo, that

"buying peace" from litigation in the circumstances presented here would constitute valid consideration under Delaware law, *see Hensel v. US Electronics Corporation*, 262 A.2d 648, 650 (Del. 1970) ("[A]s a general rule, a forbearance to sue is valid consideration whether the suit would have been successful or not."), the reality is that the stipulation did not give LeGro a legal entitlement to "peace" or even forbearance from suit. Something not given cannot constitute consideration.

Withrow has directed the Court to a Delaware Court of Chancery opinion as support for his position that the stipulated judgment provides LeGro sufficient consideration. In *Rowe v. Rowe*, 2002 WL 1271679 (Del. Ch. May 28, 2002), the Court of Chancery refused to permit a mother to unilaterally avoid her obligations under a settlement agreement she had executed with her son, pursuant to which the son had dropped litigation against his mother over a parcel of land in exchange for the mother agreeing the son could have the land. *Rowe*, however, is unhelpful here because it arose in a very different procedural posture. By the time the dispute giving rise to the *Rowe* opinion arose, the son had dismissed his lawsuit against his mother; dismissal of the suit plainly sufficed as consideration for his mother's agreement her son could possess the land. The opinion does not indicate whether, as part of the agreement to settle, the son agreed to drop his lawsuit; there was no need to go into this because by the time the issue was before the Court the son had, in fact, dropped his suit. Unlike in *Rowe*, however, here the Court must examine the stipulated judgment at a time before Withrow has done anything for LeGro. The Court finds that Withrow has not even made any binding promise to do anything for LeGro. Therefore, again, there is no consideration.

Withrow has also suggested that even if the stipulated judgment provides nothing to

9

LeGro, consideration may be found in the "detriment" Withrow would suffer from entry of the stipulated judgment. Specifically, Withrow notes that pursuant to the stipulation he "lost" $1,425 from the policy proceeds because he agreed that U.S. Life could deduct that amount for its attorneys' fees. (D.I. 40 at 24) While it is true that a detriment to a promisee may serve as consideration (just as may a benefit to a promisor), that is only so where the detriment to the promisee is the inducement for the promisor to enter into the agreement. *See Haft*, 841 F. Supp. at 573 (defining consideration under Delaware law as "that which is given to induce a promise or performance in return"); *Restatement (Second) of Contracts* § 71 (1981) ("To constitute consideration, a performance or a return promise must be bargained for . . . [which means that] <u>it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise</u>") (emphasis added); 17A Am. Jur. 2d Contracts § 117 ("A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract . . . [but] the detriment incurred must be the 'quid pro quo' or the 'price' of the promise, and the inducement for which it was made."). Here, there is nothing in the record to substantiate a claim that LeGro (the promisor, who promised to let Withrow have the proceeds) was induced to execute the stipulated judgment because Withrow (the promisee, the recipient of LeGro's promise he could have the proceeds) had agreed to "pay" the U.S. Life attorney fees out of the proceeds.

Because the stipulated judgment provides no consideration to LeGro, it is not a binding contract under Delaware law, and the Court will not enforce it.

**LeGro Fails to Make a Prima Facie Case of Duress**

Finally, LeGro argues that the stipulated judgment is unenforceable because she signed it under duress. (D.I. 26 at 12-14) The legal elements of duress are: (1) an improper threat, (2)

10

which overcame the party's free will, and (3) left her without a reasonable alternative to protect her interest. *See Leonard*, 204 F. Supp. 2d at 788.

The Court agrees with Withrow that LeGro has failed to make out even a prima facie case of any of the elements of duress. LeGro claims the improper threat she received was Withrow's September 7, 2007 letter, containing vivid details of what she could expect the litigation to look like if she pressed her purported entitlement to the policy proceeds. This letter, she continues, was so threatening that it overcame her free will to decide to pursue her purported rights to the policy proceeds and left her with no choice but to sign the stipulated judgment on or about October 17, 2007. (D.I. 26 at 13)

There are many problems with LeGro's position. Foremost is that under Delaware law, "a theory of duress premised on the threat of litigation is at best a difficult one to sustain." *E.I. DuPont de Nemours and Co. v. Custom Blending Inter., Inc.*, 1998 WL 842289 (Del. Ch. 1998). Moreover, the timing does not support LeGro. The record shows that Withrow had been telling LeGro since approximately June 2007 that he was going to fight her for the proceeds; the September 7, 2007 letter comes too late to be a threat because it merely put Withrow's ongoing "threats" on paper. But the September 7 letter also comes too early, for it was not until October 17, 2007 that LeGro signed the stipulated judgment. The passage of nearly six weeks between receipt of the letter and execution of the stipulation – during which time LeGro was in communication with counsel for U.S. Life, who advised her she could and should consult counsel – belies any suggestion that LeGro's free will was overcome and that she lacked reasonable alternatives to signing away her rights. *See Cianci v JEM Enterprise, Inc.*, 2000 WL 1234647, at *9 (Del. Ch. August 22, 2000) ("[T]he availability of disinterested advice and the

11

length of time that elapses between the making of the threat and the assent also play into the causation analysis.").[4]

## CONCLUSION

For the foregoing reasons, Withrow's motion to enforce the stipulated judgment is DENIED. An appropriate order follows.

---

[4]Because the Court is denying Withrow's motion, it likewise denies his request for attorneys' fees. (D.I. 22 at 9)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, <br><br>      Plaintiff, <br><br>v. <br><br>JAMES R. WITHROW and MYUNG PHAM LEGRO, <br><br>      Defendants. | Civ. No. 07-511-LPS |

## ORDER

At Wilmington this 31st day of January, 2008, for the reasons set forth in the memorandum opinion issued this same date,

IT IS HEREBY ORDERED that Defendant James R. Withrow's motion to enforce stipulated judgment (D.I. 21) is DENIED.

_____
United States Magistrate Judge